· WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—June, 1881.

## COCKS v. BARLOW.

### *In the matter of the estate of* JOHN COCKS, *deceased.*

One named as *cestui que trust* in a will may take, under its provisions, in
trust for himself and others.

An executor and trustee who, although having qualified, never acts or at-
tempts to act as such, receives none of the funds, and is not cognizant
of or consulted in respect to the management of the estate, is not liable
for the acts of a co-trustee.

A *cestui que trust* may, by executing a formal release, discharge all or any
of several trustees from liability for a breach of the trust.

Where an annuity given by will is derived from the bequest of a fixed sum,
the beneficiary may assign his interest,—the provisions of 1 *R. S.*, 730,
§§ 63, 65, relating to the alienation of trust interests, even if held to
include trusts of personalty, not applying to such a case.

The testator died in 1868, leaving an estate of $125,000, a widow, and five
children, as follows: two married daughters, A. the husband of F.,
and B. the husband of G.; one unmarried daughter, C.; and two sons,
D. and E. (the latter not *sui juris*). By his will, he appointed his
widow, all his children, and his sons-in-law, executors, directing them,
within three months after his death, to invest, on bond and mortgage
in Westchester county, funds sufficient to yield an annuity of $1,000,
to be paid to his widow during life or widowhood, and dividing the
rest of his property among his children, E.'s share being in trust for
life, with remainder to his issue.   The widow qualified as an execu-
trix, but D. and F., a son and son-in-law, partners in business, assumed
the exclusive management of the estate, and were the only active exec-
utors.   On May 1, 1870, over $100,000 having been divided among
themselves by the children, and no investment having been made for
the widow, $10,000 was lent, at the instance of D., on mortgage upon
lands in Wisconsin, at ten per cent. interest, to provide for her annu-
ity.   This investment proved disastrous, and the widow protested
against it, on learning that it had been made.   The other executors
acquiesced.   D. and F. failed in 1876, after which the widow received
no considerable portion of her income.   About the same time, all the
executors, except the widow, gave her their personal bond conditioned
to pay her the annuity, which was not complied with, whereupon B.,
G. and C. paid her $1,800, and obtained a release from all claims.   On
an application by the widow for a decree that the co-executors pay her

the arrears of income, and make the required investment, and be removed from office, etc., *Held,*

1. That the investment in Wisconsin was a glaring breach of trust; for which, however, the widow was not responsible, not having been consulted, nor having acquiesced either as co-trustee or as *cestui que trust.*
2. That by her release she had discharged B., G. and C. from liability.
3. That the decree must be against A., F. and D., directing payment of the arrears of annuity and interest, and that they invest, as directed by the will, a fund necessary to produce the annuity, having regard, in fixing the amount, to the effect of the payment of the $1,800.
4. That the prayer for removal was inconsistent with the other relief asked, and must be denied.

Williams *v.* Thorn, 70 *N. Y.*, 270,—distinguished.

John Cocks died in 1868, seized and possessed of an estate valued at about $125,000. He left him surviving a widow, Adelia Cocks, and five children, to wit, Mary, Phebe, Anna, David and Harrison, Mary being then the wife of George J. Barlow, and Phebe the wife of Daniel E. Haviland. He left a will, of which he appointed his widow and all of his children and their husbands executors. Among other things, the will directed the executors to invest, within three months after testator's decease, sufficient funds on bonds and mortgages in Westchester county, to yield an annual income of $1,000, to be paid to his widow for life or widowhood. The rest of his estate he divided equally among his five children, but provided that David's one-fifth should be invested in like manner, and the income be applied to the support of himself and family during his life, with remainder to his children. The testator left upwards of $45,000 in bonds and mortgages. These were mostly paid in, prior to January 1, 1869, when the proceeds, together with other moneys received, amounting to about $85,000, were divided among the five children, David's share being paid to George J. Barlow, who was then his committee, but

had since been duly discharged by the supreme court. No investment had been made, to produce the widow's annuity as required by the will, up to the last named date, but it had been regularly paid. In July, 1869, another sum of upwards of $2,100 was divided among the children, and again on May 1, 1870, still another sum of nearly $20,000 was divided in like manner. At the same time, an investment of $10,000 was made on mortgages on real estate in Wisconsin, at the rate of ten per cent. interest, to secure the payment of the widow's annuity. After a few years, this investment proved to be somewhat disastrous, and failed to produce the income, but it was paid with more or less regularity down to 1877. Barlow and Harrison Cocks, who were copartners in the manufacturing of bricks, and in a store at Croton Landing, were the acting executors, receiving and disbursing the moneys of the estate, but all joined in the execution of conveyances of real estate which they were authorized by the will to make. Cocks and Barlow kept the accounts of the estate in their firm books, the most important of which cannot now be found. The firm became insolvent in 1876, and since then no considerable portion of the income had been paid. About the same. time, all the executors, save the widow, executed to her a bond conditioned that they would personally, not as executors, pay her the annuity. They failed to comply, and Mr. and Mrs. Haviland and Anna Cocks (then Varney), in consideration of a release from their liability on the bond, executed to them by the widow, and of all liability as executors or otherwise, paid her a gross sum of $1,800.

These were the leading facts developed in the course

COCKS *v*. BARLOW.

of a proceeding based on an application of the widow, on which an order was made, requiring her co-executors and executrices to show cause why they and each of them should not account to her for the arrears of her annuity, then claimed to be about $2,000, and why they should not be decreed to pay it ; why they should not be decreed to invest the fund to produce the annuity ; and why they should not be removed as executors, and a trustee appointed in their stead.

JAMES A. HUDSON *and* RAPHAEL J. MOSES, JR., *for the petitioner*.

HENRY C. NELSON *and* M. L. COBB, *for Mr. and Mrs. Haviland, and Mrs. Varney, executors*.

F. LARKIN, *for Mr. and Mrs. Barlow, D. Cocks, and H. Cocks, executors*.

THE SURROGATE.—Unfortunately, this is by no means an exceptional case. Violations of testamentary trusts, the faithful execution of which should be regarded as a sacred duty, have become alarmingly frequent. If those to whom such trusts are confided could but be impressed by the conviction that the only path of safety for themselves and those whose interests are placed in their charge, is that which leads to a strict and rigid adherence to the letter and spirit of the instrument from which their power is derived ; if they could be made more thoroughly aware of the danger always attending the possession of and power over moneys that do not belong to them, such instances would be more rare. But, doubtless, as long as human nature remains unchanged, as long as men will hazard loss for the sake of gain, this condition of things may be expected to endure.

Here, I think, is a glaring instance. It would have

required about $16,000, invested according to the provisions of the will, to have produced the annuity, while $10,000, invested in a western State, would yield the same result. Therefore, the difference could be, at once, divided among the children. Hence, a violation of the plainest possible direction was hazardous, and to the loss of all concerned.

The first question to be considered is, what, if any, remedy has the widow? By the will, she was constituted one of the trustees, for herself and also for David Cocks. Her appointment as such was valid (*Perry on Trusts*, § 59). If, therefore, she aided·in the violation of the trust created for her own benefit, I think she would be without remedy other than such as she might have against that portion of the diverted fund which still remains. But it is quite apparent that she took no part in the violation of the trust. She was the second wife of the testator, and all of the five children were his offspring by a former wife. It does not appear that she was consulted by them with reference to the management of the estate, or took any part therein, except to join in the execution of conveyances. While she qualified as executrix by advice of counsel, without understanding what she did, I find no evidence whatever that she did, or attempted to do, any act as executrix or trustee. She never received any of the funds of the estate, other than her annuity, and seems to have been treated as a stranger by the other executors, in so far as the management of it was concerned. It, therefore, would seem that she should be regarded as never having entered upon the duties of the trust, and is not obnoxious to the charges and penalties of a violation·of it. It

is true, she apparently accepted the office of executrix, and would by that act be deemed, ordinarily, and in the absence of further evidence, as having accepted the trust also (3 *Redf. on Wills*, 530) ; but I think I am justified by the facts in finding that she did not accept it ; which it was competent for her to do (Green *v.* Green, 4 *Redf.*, 357). Again, if she acquiesced in the breach of the trust, as *cestui que trust*, as she was competent to do (*Perry on Trusts*, § 849), she would be without remedy in so far as the loss of the fund is concerned, but only where the acquiescence was of longer continuance than could be claimed in this case. When she first heard it had been done, she protested against it. Hence that is no valid objection. Is she debarred from her claim by reason of the setting apart of the sum of $10,000, so invested, to produce her income ? *Perry on Trusts* (§ 574), lays down the rule, as gathered from authorities cited by him, that where a fund is set apart to produce the income and it is lost, it seems the testator's estate cannot be held for the loss. That rule, I apprehend, is only applicable where the fund is set apart in compliance with, and not in violation of the terms of the trust.

Having thus reached the conclusion that Mrs. Cocks, notwithstanding these apparent obstacles, is not without remedy, the next question for consideration is, what is that remedy ? The bulk of the estate was divided among the legatees, exclusive of the $10,000 investment for the widow's benefit, and was paid to them on and prior to May 1, 1870, the last dividend being made on the last named day. That was proper, provided a suitable provision had been made to secure the widow's income. Whatever was so divided belonged to the children re-

spectively, subject, however, to such claims as might be established against them, for the violation of any trust with the execution of which they were charged.

Harrison Cocks was the originator of the idea of investing the $10,000 in Wisconsin, and seems to have consulted the other trustees, except the widow, in regard to it. Mrs. Haviland and Mrs. Varney doubted the propriety of the act, but so far acquiesced in it afterwards as to render themselves equally liable with him and the others, had they not subsequently taken such measures as to shield themselves from its legal consequences. Some few years since, the widow threatened some proceeding in this court with a view to enforce the payment of her income. It was, however, abandoned on the executors giving their personal bond with a condition for the payment of the same to her, and providing that her acceptance of the bond should in no wise interfere with or prejudice her rights under the will. Some negotiations occurred, having in view a settlement with her by paying her a sum of $4,500 in gross, which she agreed to take, but the parties failed to pay the amount. Subsequently she released Mr. and Mrs. Haviland and Mrs. Varney from their liability on the bond and as executors, etc., for a valuable consideration. I can discover nothing in that transaction savoring of fraud. They had had nothing to do with the management of the estate, and their liability to her as executors might well be considered by her as doubtful, and they paid her their share of the gross sum of $4,500. Cocks and Barlow, the managing executors, had become insolvent, and the affairs of the estate were in confusion. She had power to execute a valid release to them (*Lewin on Trusts*, 637, etc.; *Perry on*

*Trusts*, § 851).   By that instrument, I must regard them as discharged from all liability in this matter, except as to a bond and mortgage of $4,000, representing that portion of the $10,000 invested by Harrison Cocks in Wisconsin and held by Mrs. Haviland.   That belongs to the estate, and the widow is clearly entitled to any benefit which may be derived from it.   It should, however, be disposed of or foreclosed, and the sum realized should be invested according to the terms of the trust. Mrs. Haviland also holds other securities belonging to the estate.   When the insolvency of Cocks and Barlow occurred, she very properly possessed herself of what she now holds, with the view of protecting the estate as far as possible.   They are of uncertain value, but whatever may be realized from them will belong to the estate.   How much belongs to the trust in favor of David Cocks, it is, perhaps, immaterial to inquire, as he appears before me, in this matter, solely in his character as executor and trustee, and asks no relief as *cestui que trust*.

   As David Cocks' wife and children are not parties to this proceeding, I can make no decree settling the account, that would bind them, as they have a right to be heard in regard thereto.   All that is incumbent upon me in this respect, is, as I think, to so far examine into the condition of the estate as to ascertain the relief to which the widow may be entitled.   Having done so, I am satisfied that there should be in the hands of the executors more than sufficient to pay the arrears of the annuity due to her.   George J. Barlow is the only one of the executors who has filed an account of proceedings, and this has been accepted as sufficient, and the litigation has been in regard to it.   This is significant as showing that

he, or at most, he and Harrison Cocks, have been mainly, if not entirely, the managers of the affairs of the estate. While he credits himself with $9,500 paid to the widow. he fails to charge himself with all of the income received, or for which he is accountable, on the investment necessary to produce the annuity, which is justly chargeable. He also fails to charge himself with about $700 of interest moneys received on the purchase-money paid by Harvey Farrington. He also credits himself with the amount of the mortgage stated by him at $4,400, assigned to Mrs. Haviland. This cannot be allowed, as it still belongs to the estate. It was neither the payment of a debt or legacy, and simply shifts the responsibility for it from him to her.

It is not easy to determine whether a decree should be made directing the investment of the whole fund requisite to produce the entire amount of the annuity of $1,000, complicated as the question is by the transaction between the widow and the Havilands and Mrs. Varney, but I am inclined to treat it, as the parties regarded it, as the payment of a sum in gross for their release from liability, and that the fund to be invested must be diminished *pro rata*, as of that date. In other words, if her life estate was then worth, say $8,000, the $1,800 paid by them should be deducted from it, and the sum to be invested should be such as would have then entitled her to a gross amount of $6,200. I think it was competent for the widow to accept a sum in gross, in lieu of the annuity, and also to release, in proper form, any or all of the executors. It has been a mooted question whether the statute (1 *R. S.*, 730, §§ 63, 65), applied only to trusts involving the management of realty, and not to trusts of

personalty. However that may be, it does not apply where a fixed sum is given as a legacy (Booth *v.* Ammerman, 4 *Bradf.*, 129 ; *Exp.* McComb, *Id.*, 151 ; Degraw *v.* Clason, 11 *Paige*, 136). The bequest being of a sum in gross, the cases of which Williams *v.* Thorn (70 *N. Y.*, 270) is a type, do not apply.

It is clear that the executors, Barlow and Harrison Cocks, and the executrix, Mrs. Barlow, are liable for the arrears of the annuity, with interest. As to the executor, David Cocks, I think he is not liable. For some reason, he was not treated by the testator as a person capable of managing his own affairs, and after his father's death, he was so adjudged by the supreme court, and Mr. Barlow was appointed committee of his estate. At the very time when the trust was violated, he was not *sui juris*, and cannot, therefore, be held responsible for that act. He does not appear to have taken any part whatever in the administration of the estate, and his affairs I judge to be in such a condition that a decree against him would be of no avail. However that might prove, I think the decree should be against Mr. and Mrs. Barlow and Harrison Cocks.

The relief sought, in other respects, is somewhat inconsistent, as this court is asked to remove the executors, and to compel them to invest the fund. Of course, if they are removed, their functions cease, and they cannot proceed to invest. Again, if they should be removed, the widow still remains as trustee, and no new trustee could be appointed unless she resign, for if she has not acted as trustee, she has an undoubted right to do so. She may decline to act, or ask to have her resignation accepted, and should it be, then, in either event

she could apply for the removal of the others. If that application were granted, it could only be done on their rendering a settlement of their accounts to all parties in interest.

On the whole, I think the petitioner entitled to a decree for the payment of her arrears of annuity and interest against the persons above indicated, and also that they invest, as directed by the will, a fund necessary to produce the annuity; having regard, in fixing the amount, to the effect of the payment of the $1,800, as above determined. Costs to the petitioner, to be taxed, are allowed against Mr. and Mrs. Barlow and Harrison Cocks.

Decreed accordingly.