HERBERT S. CARRUTH, trustee, *vs.* ELLEN CARRUTH.
GEORGE M. REED, trustee, *vs.* SAME.

Suffolk. January 4, 1889. — January 5, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Will — Distinct Trusts in Single Clause — Appointment of Separate Trustees.*

A testatrix, in her will, gave the residue of her estate real and personal to a trustee, to pay the income to her sister for life, the personalty to be kept " separate and distinct " from the realty and its proceeds if sold, directing him after the sister's death to give such personalty to a society named, and to hold the realty or its proceeds in trust to pay the income to a brother, and, upon his death, to divide it among his children, or, if no children, to transfer it to the same society. *Held*, that two distinct trusts were created, and that the Probate Court, upon the trustee's declining to accept the trust as to the realty, might appoint a separate trustee for that trust.

TWO APPEALS from decrees of the Probate Court, appointing separate trustees for the real and personal property given by the residuary clause of the will of Emma Carruth. The cases were submitted to this court upon an agreed statement of facts, in substance as follows.

Emma Carruth, the testatrix, died on May 31, 1888, leaving a will, which was duly admitted to probate, and which, after creating in the sixth clause a trust in personal property for the benefit of Elizabeth F. Carruth, and in the seventh clause another trust also in personal property for the benefit of Elizabeth D. Allen, both of which trust funds, in case the testatrix's sister, Ellen Carruth, survived the beneficiaries, were to form a part of the residue of the estate, contained the following clause, which alone is material :

" Ninth. All the rest and residue of my property and estate, real and personal, of every name and nature, that shall belong

to me at the time of my decease, and wherever situated, and also all property over which I may have power of disposal, under the will of my father, Nathan Carruth, dated May 7, 1881, and allowed June 20, 1881, I give, devise, and bequeath to the said George M. Reed, but in trust, to hold, manage, and invest the same with a view to safety and profit, and pay the net income thereof quarterly to my said sister, Ellen Carruth, for and during her life.

" I direct my trustee to keep the personal property received by him separate and distinct from the real estate, and from the proceeds derived by him from the sale or sales of real estate, and upon the decease of my said sister to pay over and transfer the personal property received by him as aforesaid, and the avails thereof, real or personal, belonging to the residuary trust fund, not including the proceeds derived from the sales of real estate made by him, to the said Woman's Board of Missions, absolutely. And upon the decease of my said sister, if my brother, Herbert S. Carruth, survives her, I direct my said trustee to hold, manage, and invest the remaining part of said trust fund, being the real estate in his hands and the proceeds of any real estate which may have been sold by him, and to pay the net income thereof as often as once in six months to my said brother, Herbert S. Carruth, for and during his life. Upon the decease of my said brother, if he shall survive my said sister, or upon the decease of my said sister, if she shall survive my said brother, I direct my trustee to pay over, transfer, and convey the real estate remaining in his hands, and the proceeds of any real estate which may have been sold by him, to the child or children of my said brother then living, in equal shares, the issue of any deceased child or children to take by right of representation, to them, their heirs and assigns, forever, free and discharged of all trusts. If upon the decease of both my said brother and my said sister there should be no issue of my said brother then living, I then direct my trustee to pay over, transfer, and convey the real estate, remaining in his hands, if any, and the proceeds of any real estate which may have been sold by him, to the said Woman's Board of Missions, absolutely, and free and discharged of all trusts."

On August 13, 1888, George M. Reed, named as trustee in

the above clause, filed in the Probate Court a petition to be appointed trustee of the personal property alone, as well as his refusal to accept the trust as to the real estate, and on September 4, 1888, he was duly appointed trustee of such personal property. Herbert S. Carruth filed a petition, on August 14, 1888, to be appointed trustee of such real estate, and on September 4, 1888, he was duly appointed such trustee. Ellen Carruth, the beneficiary named in the residuary clause, duly appealed from each of the decrees of the Probate Court appointing Reed and Carruth as such trustees, making, however, no objection to the trustees personally. The personal property named in the residuary clause amounted to between $40,000 and $50,000, and the value of the real estate devised by the same clause was $17,900.

The case was heard before *Field*, J., who reserved it for the consideration of the full court, upon the question whether it was competent and proper for the Probate Court to appoint the two trustees.

The case was submitted on briefs to all the judges.

*G. M. Reed*, for the trustees.

*A. C. Vinton & S. W. Reed*, for Ellen Carruth.

MORTON, C. J. By the ninth clause of her will, the testatrix gives the residue of her property, real and personal, to a trustee, to hold and manage the same, and to pay the income to her sister during her life. She directs the trustee to " keep the personal property received by him separate and distinct from the real estate, and from the proceeds derived by him from the sale or sales of real estate," and upon the death of her sister to pay and transfer such personal property to the Woman's Board of Missions. She also directs that, after the death of her sister, the trustee shall hold the real estate or its proceeds in trust to pay the income to her brother during his life, and upon his death to divide the same among his children, or, if he leaves no children, to transfer and pay the same to the Woman's Board of Missions.

This creates two separate and distinct trusts, one of the personal property and the other of the real estate left at her death. It is the same in legal effect as if the two trusts had been created in separate clauses of the will. They are as distinct and

separate from each other as are the two trusts created by the sixth and seventh clauses of the will. This being so, we can see no objection to the trustee's resigning or refusing to accept one of the trusts, if good reasons exist for doing so, and accepting or continuing in the exercise of the other trust; and in such case the Probate Court has, under the broad terms of our statutes, the power to appoint a new trustee to execute the trust which he has resigned or declined. Pub. Sts. c. 141, § 5.

The case of *In re Cunard's trusts*, 48 L. J. (N. S.) 192, is precisely in point. There the testator left all his property to two trustees, to raise thereout six several sums of $20,000, each to be held on a separate trust, and it was held that there was no objection to the appointment of a new trustee in place of one of the trustees who desired to resign his trust as to one of the funds. This rule has since this decision been established or recognized in England by the Conveyancing Act of 1882. St. of 45 & 46 Vict. c. 39. Lewin on Trusts, (8th ed.) 667. 1 Perry on Trusts, (3d ed.) § 280. *In re Wadsworth*, 2 Barb. Ch. 381.

We are therefore of opinion, that in the case at bar the Probate Court had the power to appoint the trustee named in the will to execute the trust as to the personal estate, and, upon his declining to accept the trust as to the real estate, to appoint another person to execute this trust.     *Decree affirmed.*