### WOOLLEY et al. v. STEWART et al.

(Supreme Court, Appellate Division, Second Department. October 1, 1915.)

1. SPECIFIC PERFORMANCE ⊕=41—PAROL CONTRACT—PART PERFORMANCE.

 To justify the enforcement of a parol agreement by a grantee to reconvey the land to the grantor, or to convey it to such persons as the grantor should designate, the existence of such agreement and part performance thereof must be shown.

 [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 120–123; Dec. Dig. ⊕=41.]

2. SPECIFIC PERFORMANCE ⊕=42—PAROL CONTRACT—PART PERFORMANCE.

 To justify the enforcement of a parol agreement to convey land, it is not sufficient to show acts indicating part performance by the grantee, though such acts may tend to prove the agreement, but it must be shown that he did acts unequivocally referring to and resulting from the alleged agreement, such as he would not have done, unless on account of that very agreement, and with a direct view to its performance.

 [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 124, 129, 133; Dec. Dig. ⊕=42.]

---

⊕=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. SPECIFIC PERFORMANCE ☜42—PAROL CONTRACT—PART PERFORMANCE.

W. conveyed land to S., his son-in-law, for a recited consideration of $5,000; S. assuming existing mortgages, taxes and assessments. S. delivered some of the rents of the property to W., and paid some to a son of W., and W. paid the debts on the property. S. conveyed parts of the land to the sons of W.; one of the conveyances reciting a nominal consideration, and the other the same consideration recited in the deed from W. to S. At the time of the conveyance to him S. was working for W. for $10 a week, and there was no evidence that he had means to pay the consideration, or that he did pay it, and no explanation of the conveyances to the sons inconsistent with an alleged parol agreement that he would hold the property at W.'s disposal. *Held*, that there was sufficient evidence of part performance to admit direct evidence of the parol agreement.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 124, 129, 133; Dec. Dig. ☜42.]

4. TRUSTS ☜44—EVIDENCE—ACCEPTANCE BY TRUSTEE.

W. conveyed land to S., there being a parol agreement of some kind whereby the property was placed in S.'s name upon some trust, for disposition as W. should direct. W. in his will devised certain of such land to his executors in trust. S., who was one of the executors, neither protested nor disclaimed, but petitioned for the probate of the will, and with the other executors obtained letters testamentary. *Held*, that this acceptance of the trust by him supplemented the evidence of the agreement as to the property covered by the will, and bound S. to the execution of the trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 66–68; Dec. Dig. ☜44.]

5. LIMITATION OF ACTIONS ☜102—EXISTENCE OF TRUST.

The statute of limitations does not affect an express trust.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. ☜102.]

6. LIMITATION OF ACTIONS ☜102—EXISTENCE OF TRUST.

Where W. conveyed land to S. upon his parol agreement to convey the land to such persons as W. might designate, the law implied a trust which would be affected by the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. ☜102.]

Appeal from Special Term, Kings County.

Action by John H. Woolley, individually and as executor of Edward A. Woolley, deceased, and another, against Sarah E. Stewart and another. From a judgment for defendants, plaintiffs appeal. Reversed in part.

Argued before JENKS, P. J., and THOMAS, CARR, MILLS, and RICH, JJ.

Samuel E. Faron, of Brooklyn (Andrew F. Van Thun, Jr., of Brooklyn, on the brief), for appellants.

John Hill Morgan, of New York City (William A. Lockwood, of New York City, on the brief), for respondents.

THOMAS, J. Edward A. Woolley died in June, 1899, leaving two sons, John and George, and a daughter, Sarah, the wife of Horatio S. Stewart, who died on July 1, 1908, leaving surviving his wife and daughter, Mary Stewart Tallcott, who as his administratrices and individually are defendants. On February 16, 1878, Edward Woolley

and wife conveyed to Stewart, by a deed with full covenants and with a recited consideration of $5,000, 59 and 61 Raymond street, 824, 826, and 828 Fulton street, and 465, 467, and 469 Clermont avenue, all in the borough of Brooklyn. There were two mortgages, severally liens on some of the properties, which Stewart assumed to pay. On May 3, 1887, Stewart and wife conveyed to John 826 Fulton street and 467 Clermont avenue, subject to a mortgage of $6,500, by deed reciting a consideration of $5,000, and on May 31, 1894, by a quitclaim deed conveyed to John three inches of land related to the same property. On June 1, 1894, Stewart conveyed to George 469 Clermont avenue by a deed reciting a consideration of $1; and on June 6, 1894, Stewart conveyed to George 828 Fulton street, subject to a mortgage of $4,500, by deed reciting a consideration of $1. On July 24, 1900, Stewart conveyed to his wife 824 Fulton street and 465 Clermont avenue, subject to a mortgage of $6,000. The deed was made after Woolley's death and recorded July 15, 1908. This left in Stewart's name 59 and 61 Raymond street. Edward Woolley left a will purporting to devise in trust certain property to his executors, Stewart, Sarah Stewart, and John Woolley, who qualified after probate of the will, as well as the northeasterly corner of Fulton street and Ashland place, which, as I gather, were at one time 59 and 61 Raymond street, and after other gifts he gave the residue of the property to his three children.

The present action is brought to compel the conveyance to Woolley's surviving executors and trustees of all the property conveyed by Edward Woolley to Stewart, except such part as Stewart conveyed to the sons. The plaintiffs contend that the conveyance to Stewart was not absolute, or for his benefit, as it appears to be, but that it was made upon the parol agreement that Stewart would convey to such persons as Woolley should designate, or reconvey to the grantor, and that there was such part performance that the parol agreement by Woolley can be enforced. The law is discussed with reference to the facts of the present case.

[1, 2] The plaintiffs must show: (1) Part performance of the agreement by the grantor; (2) the existence of the agreement itself. It is not sufficient to show acts indicating part performance by the grantee, although such acts may tend to prove the agreement. It must be shown that the grantor did acts "unequivocally referring to, and resulting from" the alleged parol agreement, "such as the party would not have done, unless on account of that very agreement, and with a direct view to its performance." Phillips v. Thompson, 1 Johns. Ch. 131, 149. The principle involved is presented fully and clearly in McKinley v. Hessen, 135 App. Div. 832, 120 N. Y. Supp. 257. As it is stated in Pomeroy on Contracts (section 108):

"A plaintiff cannot, in the face of the statute, prove a verbal contract by parol evidence, and then show that it has been partly performed. This course of proceeding would be a virtual repeal of the statute. He must first prove acts done by himself, or on his behalf, which point unmistakably to a contract between himself and the defendant, which cannot, in the ordinary course of human conduct, be accounted for in any other manner than as having been done in pursuance of a contract, and which would not have been done without an existing contract; and although these acts of part

performance cannot, of themselves, indicate all the terms of the agreement sought to be enforced, they must be consistent with it, and in conformity with its provisions when these shall have been shown by the subsequent parol evidence."

[**3**] What acts did Woolley do that tend to show part performance of a parol contract? The deed purported to give Stewart the absolute fee. From such ownership flows the vital right to use the rents and profits, and imposed the corresponding burden of paying the taxes and similar liens. Indeed, Stewart assumed existing mortgages, taxes, and assessments. But the record shows by defendant's admission that Stewart delivered some of the rents to Woolley and paid some to George, and, what is of real importance, that Woolley "paid the -rents" on the property. Mrs. Woolley, wife of George, testified that Stewart so told her, and her statement is aided by the documentary evidence that limits payments of taxes by Stewart to a time after Woolley's death. The mortgage for $10,000 was satisfied in 1880. By whom the payment was made does not appear, unless by Stewart's statement to Mrs. Woolley, to which I have referred. Woolley would not alienate land and continue to pay for its maintenance, and Stewart would not pay him the rents, the essential value of ownership, unless there was an agreement that the conveyance was not for the entire benefit of Stewart, and was, at least in a degree, for the use of Woolley and his appointees. I do not find that Woolley did anything more that would be accounted part performance. But what he did tends to show part performance of an agreement, such as has been proven. Moyer v. Moyer, 21 Hun, 67; Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; see Ryan v. Dox, 34 N. Y. 307, 318, 319, 90 Am. Dec. 696; Wood v. Rabe, 96 N. Y. 414, 422, 425, 48 Am. Rep. 640; Curtis v. Leavitt, 15 N. Y. 281, 287, 289; Gallagher v. Gallagher, 135 App. Div. 457, 120 N. Y. Supp. 18, affirmed 202 N. Y. 572, 96 N. E. 1115; Ahrens v. Jones, 169 N. Y. 555, 559, 560, 561, 62 N. E. 666, 88 Am. St. Rep. 620; Casey v. Casey, 161 App. Div. 427, 428, 146 N. Y. Supp. 348; Messiah Home for Children v. Rogers, 212 N. Y. 315, 106 N. E. 59.

Stewart in Woolley's lifetime made conveyances of parts of the land, one to John and two to George, and but one of them was for more than a nominal consideration, and that was for the same consideration mentioned in the deed from Woolley to Stewart. At the time of such deed Stewart was in Woolley's service for a weekly salary of $10 per week. There is no evidence that he had means to pay for the consideration money, or that he did so; nor is there any explanation of the conveyances to the sons inconsistent with the alleged agreement that he held the property at the disposal of Woolley. In my judgment, enough has been proven to permit direct evidence of a parol agreement. Mrs. Woolley testified to the effect that at a family meeting at which the lawyer, John H. Lockwood, was present, Woolley said in the presence of Stewart, "I am putting all this property in one deed to you, and only to hold till such time as I shall direct you to convey it back to me, or to whomever I shall direct you to give it," and that Stewart was to continue to act as agent to collect the rents and to make some distribution of rents to the children.

She says that her husband did receive the rents of 828 Fulton street and 469 Clermont avenue during the lifetime of Woolley, and it should be noted in this connection that such two properties were conveyed to George in 1894. Mrs. Woolley testified that the conversation was in the evening between 7:30 and 10 o'clock. The deed was dated on that day, and recorded at 2:10 p. m. of that afternoon. That fact does not accord with Mrs. Woolley's statement that the deed was present at the conversation, although she later said that the meeting might have been earlier, but she seemed to think that it was not. She restates the conversation upon her redirect examination, that Woolley said:

"'I have called you all together to place my property in your hands,' and then looking at Mr. Stewart, he said, 'I am going to place in your hands 59 and 61 Raymond street.'"

She states that all the children except George were present. Mrs. Stewart testified that she was not present. The conversation was 36 years before the trial. Woolley and Stewart had died. John, George, and Sarah could not testify.

[4] While there was some agreement whereby the property was placed in Stewart's name for some purpose, that is, upon some trust, for a disposition of it by Stewart as Woolley should direct, I consider that it is not clear that the court can decide to what extent the trust should be enforced without the aid of Woolley's will and Stewart's acceptance of its provisions. Stewart had, during Woolley's life, conveyed properties to the sons, and nothing to the daughter, his wife. By what direction did he do that? It may be inferred from Mrs. Woolley's testimony that there was some arrangement that George should have the property conveyed to him. But why was there a conveyance to John for a consideration of $5,000? Whatever doubt may exist as to any other parcel of property, there is none as to the northeasterly corner of Fulton street and Ashland place. That property Woolley devised to his executors, upon the trust that the proceeds of sale thereof should be distributed, $10,000 to John, a like amount to Sarah, a like amount in estates to George and his children, and the balance to churches. The will in itself was self-serving and proves nothing. However, there was an assertion of ownership. It may have been without right, as was some other property which the will purported to pass. But the devise was to the executors for the purposes of the trust. They took the title to the land, if the testator had it. Judson v. Gibbons, 5 Wend. 224, 227.

Stewart neither protested nor disclaimed, but with his wife petitioned for the probate of the will. Letters testamentary were issued to them and John, George contesting the probate. He did not decline this particular trust at the time of probate, and so bring himself within Matter of Wadsworth, 2 Barb. Ch., 381, 385, or Carruth v. Carruth, 148 Mass. 431, 19 N. E. 369. That is affirmative evidence that he accepted the trust. Earle v. Earle, 48 N. Y. Super. Ct. 18; Cocks v. Barlow, 5 Redf. Sur. 406, 411. But his acceptance completes the proof that he recognized the right of Woolley to direct the disposition of the property in trust. Later Stewart did an act in disavowal of

Woolley's right to devise and in favor of his individual ownership, and hence in contravention of the trust. But with full knowledge of the facts, whatever they were, he established the will in its entirety and accepted the trust without possible reservation. He could not avowedly accept the trust and then at his leisure prefer the part that he would preserve and execute and select other parts for destruction and for confiscation. He voluntarily assumed the character of executor and trustee, and may not deny it, either as against his cotrustee or the cestui que trust. Easterly v. Barber, 65 N. Y. 252. He accepted the trust to be faithful as a trustee, but upon consideration essayed to betray it as an individual. The devise, and acceptance of the office to execute it, supplements the evidence of the agreement, and, as to the trust property at least, defines the agreement.

· Moreover, as stated, the acceptance of the trust bound Stewart to its execution. When he and his wife came to account in 1901, he failed to include the trust property in his account, to which, among other things, George objected. The record shows that evidence was taken which, so far as appears, has no reference to the present issue, and that the referee reported; but the present record does not show definitely the scope of his report, or what decree was entered, nor am I satisfied that the Surrogate's Court had jurisdiction to determine the question. In 1904 Sarah Stewart, individually and as executrix and trustee, brought an action to construe her father's will, and Horatio S. Stewart was made a defendant, as he would not consent to join as a party plaintiff; but he did not answer, nor is there any manifestation that he dissented from the consideration of the subject by the court, or objected to any direction it might make. The result of the action was that the Appellate Division, in 1907, modified the judgment of the trial court, and adjudged that the executors had power to sell the property, and that the proceeds should be distributed in the manner stated. In 1900 George Woolley brought an action against Stewart and his wife, individually and as executors of Woolley, to set aside the deed from Woolley to Stewart. Stewart defended upon several grounds, among others that Woolley conveyed the whole estate to him and that no trust was created. The case came to trial, and the complaint was dismissed in 1913, but upon what ground does not appear. The proceedings for the accounting and the actions do not estop any of the parties to this action. But, when Stewart accepted the executorship, he accepted the devise in trust, and has not been relieved from the result of his conscious act, or the inference flowing from it. It perfected proof of the agreement, and an express trust arose as to the land subject to it, which Stewart undertook to perform. The performance requires that the title of the property on the northeasterly corner of Fulton street and Ashland place, which he held, and which has descended to his daughter, and in which his widow has a dower interest, should be conveyed to Woolley's surviving trustees.

· [5, 6] The statute of limitations does not affect an express trust. Hamer v. Sidway, 124 N. Y. 538, 27 N. E. 256, 12 L. R. A. 463, 21 Am. St. Rep. 693; Sheldon v. Sheldon, 133 N. Y. 1, 30 N. E. 730. In the present case, the law also implies a trust (Goldsmith v. Goldsmith, supra), which would be affected by the statute (Mills v. Mills,

115 N. Y. 80, 21 N. E. 714). The action is for the specific performance of an agreement, but it is as well to enforce a trust which, by virtue of the will and its acceptance by Stewart, has become an express trust.

The judgment, so far as it dismisses the complaint as to the property on the northeasterly corner of Fulton street and Ashland place. should be reversed, and the plaintiffs should have judgment for the conveyance to them of that property, with costs, but not of this appeal. All concur.