## COMMISSIONER OF INTERNAL REVENUE v. UNITED STATES TRUST CO. OF NEW YORK.
### No. 199.

Circuit Court of Appeals, Second Circuit.
March 4, 1935.

Frank-J. Wideman, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., for petitioner.

E. Sheldon Stewart, of New York City, and John P. Wilson and Clay Judson, both of Chicago, Ill., for respondent.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Pursuant to sections 1002, 1003, of the Revenue Act of 1926, c. 27, 44 Stat. 9, 109, 110 (26 USCA §§ 1225, 1226), and section 1001, as amended by section 1101 (a) of the Revenue Act of 1932, c. 209, 47 Stat. 169 (26 USCA § 1224 (a), the petitioner seeks a review of the Board of Tax Appeals decision holding that John P. Wilson, by a deed of trust dated March 12, 1913, whereby he transferred in trust certain stocks for the benefit of his three children, and by later amending the trust agreement on three different occasions, created three trusts, not one as claimed by the petitioner, and that there were three taxable entities. The sole question presented here is whether there remained but one trust after the several amendments of the trust agreement.

By the trust agreement of March 12, 1913, the grantor's three children, John P. Wilson, Jr., Martha Wilson, and Anna W. Dickinson, became beneficiaries under the trust created by the transfer of certain stocks. The trustee was authorized to receive the income, to sell any of the securities and reinvest the proceeds in accordance with written instructions of two of the beneficiaries, and to vote all stock held in trust, and to otherwise act in respect thereof as if it were the owner. One-third of the net income was to be paid to each child as long as he or she should live, and, upon the death of any one of the principal beneficiaries, his or her one-third should be paid over and distributed in accordance with the directions in his or her will, and, in default of such directions, then to the surviving issue of the deceased beneficiary, and, in default of such issue, to the beneficiaries entitled to participate in the other two-thirds of the income. It was provided that during the first fifteen years of the trust, with the written consent of the primary beneficiaries, the net income might be accumulated by the trustee and added to the principal of the trust. The trust was terminable at any time, in whole or in part, by the three children of the grantor by an instrument in writing approved by the grantor, if living, and it would also terminate in any event upon the death of the survivor of the three children, the primary beneficiaries. Upon termination, equal distributions of one-third to each of the children, if living, or to their children, if deceased, were provided. It was also provided that the trust instrument might be altered, changed, or modified in any manner and to any extent by the three children by instrument in writing filed with the trustee, subject only to the approval of the grantor, if living.

On September 21, 1918, the grantor and beneficiaries amended the trust agreement by providing that the trust estate should be divided into three separate and equal parts or shares, each designated by the respective names of his three children, and undivided interests in the estate assigned to each share. The net income from each share during the remainder of 1918, and one-half of the net income from each share after December 31, 1918, and during the life of the grantor, should be accumulated and added to the principal of such share, subject to the right of the beneficiary to receive upon his written request, approved by the grantor, the whole or any part of the one-half of the net income from his share of the estate directed to be accumulated. In other respects

the original deed of trust continued in force and effect.

On June 19, 1919, the deed of trust was amended a second time to provide that one-half of the net income of each share of the trust estate, or of each of the three trust estates should be paid over and distributed as received to the beneficiaries entitled thereto, and the remaining one-half of such net income should be paid in whole or in part to the beneficiaries entitled thereto when requested in writing by two of the original beneficiaries; any of the net income not paid over or distributed to be added to the principal of the trust fund from which derived. If any of the beneficiaries died, the net income from the trust estate to which such deceased beneficiary would have been entitled was to be payable to the issue of the grantor and to the surviving wife or husband of the deceased beneficiary and to charities in accordance with the directions in such beneficiary's last will, and, in default of any such directions, then to the surviving issue of deceased beneficiary per stirpes, and, in default of such issue, to the surviving issue of the grantor per stirpes. Upon termination of the trusts, the several trust estates should be paid over to the beneficiaries respectively entitled thereto, the share or estate of any deceased beneficiary to be paid to the issue of the grantor and to the surviving wife or husband of the deceased beneficiary, and to charities, as might be directed by will, and, in default of such direction, to the surviving issue of such beneficiary, and, in default of such issue, to the surviving issue of the grantor. But for this modification, the original trust remained as above.

On December 1, 1920, the deed of trust was amended a third time to provide that the trustee should pay out each year so much of the net income from each of the separate trusts to the beneficiaries entitled thereto as should be requested in writing by a majority of the beneficiaries, subject to the requirement that equal payments be made out of the net income from each of the separate trusts so that each trust should be maintained on a basis of equality in amount as far as practicable. Any part not so paid out in accordance with this provision was to be added to and form a part of the principal of the trust estate from which derived.

These amendments were executed by the original beneficiaries, approved by the grantor, and delivered to the trustee. A further amendment was made April 25, 1928, by the surviving original beneficiaries to authorize the trustee to borrow such sums of money as should be authorized and directed by John P. Wilson, Jr. Except for the foregoing amendments, the deed of trust was in force during the taxable years in question, 1924 to 1929, inclusive. Prior to the amendment of September 28, 1918, the trustee kept its accounts as a single trust for the three beneficiaries, but after that date the capital account of the trustee was divided into three equal parts, one assigned to each beneficiary. Separate accounts were thereafter kept. The corpus was always stocks and cash. There was never an actual division to each beneficiary, but a third interest in each item of property was assigned to the account of each beneficiary. No segregation of the stock certificates or money took place. Each beneficiary was assigned his third interest in each item of trust property. Income received was divided and carried in equal amounts to the account of each beneficiary. The certificates of stock were held by the respondent as trustee under the original deed of trust or in the name of the nominee of the trustee. After these several amendments or any of them, the certificates of stock were not surrendered to the various corporations and new certificates issued. Other than the maintenance of three separate accounts on the books, to which the interests of the original beneficiaries were assigned after September, 1918, the estate was treated by the trustee as held in one trust. The trustee kept one bank account for all. Cash receipts were deposited and disbursements withdrawn from it for all. The original beneficiaries gave instructions in writing from time to time to the trustee respecting distribution of income from the trust property and the investment of trust funds. John P. Wilson, Jr., one of the original beneficiaries, always joined in such instructions. Sometimes the original beneficiaries would purchase securities and forward them to the trustee for addition to the trust estate in advance of income from the trust to pay therefor, and the trustee would reimburse the beneficiaries as the income was received.

The grantor died October 3, 1922; Martha Wilson died December 25, 1923.

The Commissioner refused separate returns for the years in question, holding that there was but one trust and that the income of all the property is taxable to one trust. If there are three trusts created, there are

no deficiencies or overpayments; if one trust, there is a deficiency for each year.

The statute imposes a tax upon the income of estates or any kind of property held in trust, including income which in the discretion of the fiduciary is to be distributed to the beneficiaries or accumulated, the net income to be computed in the same manner and on the same basis as in the case of an individual, and the fiduciary is required to make an annual return for every estate or trust having an income of $1,500 or gross income of $5,000. Sections 219, 225 of the Revenue Acts of 1924 and 1926 (26 USCA § 960 note, and § 966 and note); sections 143, 161, 162 of the Revenue Act of 1928 (26 USCA §§ 2143, 2161, 2162).

The Board of Tax Appeals found that it was the intent of the grantor to make three separate trusts. John P. Wilson, Jr., testified that the amendments were made for the purpose of dividing the several interests to facilitate administration in the event of death of any one of the beneficiaries and for the purpose of reducing taxes on accumulated income by assigning the same to three trusts rather than one.

We are satisfied that three separate trusts were not created. The intent of the parties who make agreements is important in aid of construction, but such intent is to be ascertained from the instrument or instruments as a whole, when read in the setting of all the circumstances, and what was actually done, rather than the purpose of the parties must control. United States v. Phellis, 257 U. S. 156, 172, 42 S. Ct. 63, 66 L. Ed. 180. By the trust deed, this grantor originally created one trust for his three children, each having an equal share. It was carried and treated by the trustee as a single trust. The same equal divisions are maintained by the amendments. The trustee assigned, after the first amendment, to each child an undivided one-third interest in the aggregate estate; all additions to the trust estate and income therefrom were similarly treated. No particular share of stock was set aside or assigned to the separate accounts of the respective beneficiaries, and no income from an identifiable stock was carried to a particular beneficiary. Acquired property after the first amendment, as well as before, was maintained in the aggregate, and only undivided interests were assigned to the respective accounts set up for the beneficiary. The income derived from all the trust property and each and every item thereof was assigned to the respective accounts, one-third to each account. While this was an allocation to the respective accounts in equal shares, it was held by the trustee in one fund deposited in a single account. The stocks were held in the name of the trustee, as under the original grant, or in the name of a nominee, and none were held by the trustee in its name separately for different beneficiaries. In making reinvestments, the trustee did not separate the funds for reinvestment into three accounts and invest for each account. It maintained one fund and invested on behalf of all the beneficiaries together.

Thus there were no separate trust estates created or maintained, and the property was not administered as belonging to distinct identifiable estates, since in every substantial respect this trust property was at all times held and administered by the trustee as a single trust estate of the three children, and this was so after the amendments as well as before.

Under applicable rules of law, the claim of three trusts must fail. The amendments resulted only in setting up separate accounts for the beneficiaries which recorded their undivided one-third interests. The property itself continued to be held in the aggregate as a single trust fund, and consequently there was but one trust estate, rather than three, during the taxable years in question. State Savings Loan & Trust Co. v. Com'r, 63 F.(2d) 482 (C. C. A. 7); Marble v. Marble's Estate, 304 Ill. 229, 235, 136 N. E. 589; Snyder v. Snyder, 280 Ill. 467, 469, 117 N. E. 465; Leach v. Godwin, 198 N. Y. 35, 91 N. E. 288; Johnson v. United States, 65 Ct. Cl. 285.

We are referred to Lynchburg Trust & Savings Bank v. Commr., 68 F.(2d) 356 (C. C. A. 4), and Willcuts v. Ordway, 19 F.(2d) 917 (C. C. A. 8). In each, by the terms of the instruments involved, there was ample to support the claim of separate trusts. In the instant case, the deed provided that it should be construed according to the laws of the state of Illinois and, in view of what was said in Snyder v. Snyder, supra, the amendments were ineffective to create separate and independent trusts for each of the beneficiaries for lack of a definite and separate corpus.

Decision reversed.