**BURNET, Commissioner of Internal Revenue, v. BURNS.**

**No. 9472.**

Circuit Court of Appeals, Eighth Circuit. Jan. 18, 1933.

Rehearing Denied Feb. 28, 1933.

Erwin N. Griswold, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. R. Johnston and L. M. Berrien, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for petitioner.

J. C. Campbell, of Charles City, Iowa, for respondent.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. McGlone v. Commissioner of Internal Revenue, 22 B. T. A. 358.

In September, 1918, R. E. Wade and H. E. Brouillard, of Oklahoma, and J. M. Burns and J. C. Campbell, of Charles City, Iowa, purchased an oil lease upon ten acres of land in the Burkburnett Oil Field in Texas. They had no means to develop the property, and, in order to secure from friends $30,000, the amount necessary for development, they entered into the following trust agreement:

"Whereas, J. C. Campbell and J. M. Burns of Charles City, Iowa, and H. E. Brouillard and R. E. Wade of Wapanucka, Oklahoma, are the owners of a certain oil and gas lease on the following described premises situated in Wichita County, State of Texas, to-wit:

"The Southwest Quarter (S. W. ¼) of the Northwest Quarter (N. W. ¼) of Block No. Seventy-five (75), in Red River Valley Land Subdivision, and

"Whereas, It is the desire and intention of the said parties to develop the said property by drilling on said premises for gas or oil, and

"Whereas, It is the intention of said parties to sell an undivided interest in the said leased premises, the proceeds of which shall be used for the purpose of so developing the said property as above stated and as hereinafter more particularly set forth.

"Therefore, It is agreed that the above named parties do hereby sell, convey and assign unto C. L. Holden, J. C. Campbell of Charles City, Iowa, and R. E. Wade of Wapanucka, Oklahoma, as Trustees, the undivided one half of the said described lease, it being understood that the undivided one half interest retained by the said first named parties shall represent and be valued at Thirty Thousand ($30,000) Dollars.

"That the remaining undivided one-half of the said lease shall also represent and be valued at Thirty Thousand ($30,000) Dollars, which shall be sold, assigned and conveyed by said Trustees for the purpose of raising the said sum of Thirty Thousand Dollars.

"That the interest that such purchaser shall acquire from the said Trustee shall be determined by the amount of the purchase price paid by said purchaser to said Trustee and shall be in proportion that such payment bears to the total amount of Sixty Thousand ($60,000) Dollars.

"That the said trustees shall execute conveyance and assignment of said undivided interest to said purchaser and shall receipt to said purchaser for money received and shall well and truly account for said money and shall furnish a surety bond in the sum of Thirty Thousand ($30,000) Dollars.

"That the said Trustees shall act as such until such time as sufficient funds are raised for the purpose of drilling and developing the said described property. When such funds are so raised a meeting shall be called of all of the parties interested in said lease and the owners thereof shall elect trustees who shall hold office for one year or until their successors are elected.

"It is understood and agreed that the money so paid to the Trustees shall be used for the purpose of drilling a well or wells and developing the said oil and gas well, for the purpose of paying the premium on the surety bond heretofore referred to and all other legitimate expenses.

"That any money remaining on hand unexpended for the purpose of drilling said well or wells, and the other purposes hereinbefore mentioned shall be returned by the said trustees to the said purchasers in proportion to the amount paid by each.

"It is also agreed that each of said prospective purchasers shall participate in proportion to the interest that they hold and own in the said property in the net profits realized or derived from said described property.

"It is also further agreed that in case of failure to drill as above provided, then and in that event, the money so paid to the said trustees shall be returned to each purchaser.

"It is further agreed that the said trustees shall have the authority to collect all moneys realized from the proceeds of the Oil

and other sources and after retaining sufficient for all necessary expenses, taxes, etc., shall distribute equally among all the owners, in proportion to their interest, the profits realized therefrom. Said trustees shall have the power to borrow money on the said property, and shall have the power to develop said property, by drilling other wells out of the proceeds in their hands if in their judgment the same is deemed advisable and for the best interest of all owners interested therein.

"In testimony hereof we have hereunto subscribed our names on this 2nd day of January, A. D. 1919.

"R. E. Wade
"H. E. Brouillard
"J. C. Campbell
"J. M. Burns."

The trustees named in the agreement sold undivided interests in the lease and raised $30,000. The purchasers of these interests received, or were entitled to receive, certificates in the following form:

"Certificate of Interest.

"Know All Men By These Presents: That J. C. Campbell of Charles City, Iowa, R. E. Wade of Wapanucka, Oklahoma, and C. L. Holden of Charles City, Iowa, Trustees, by virtue of the power in them vested by and because of a certain trust agreement executed by R. E. Wade, H. E. Brouillard, J. M. Burns and J. C. Campbell, and recorded in Wichita County, State of Texas, for (and) in consideration of the sum of ——— Dollars, in hand paid by ——— of ——— County, State of ——— do hereby grant, bargain, sell and assign to ——— an undivided ——— interest in and to a certain gas and oil lease covering the following described premises:

"The Southwest Quarter (S. W. ¼) of the Northwest Quarter (N. W. ¼) of Block No. Seventy-five (75), of Red River Valley Lands Subdivision recorded in the office of the Register of Deeds, in Wichita County, State of Texas.

"This transfer of interest is made in compliance with the provisions of the said trust agreement and the said grantee is hereby vested with all rights and privileges provided for and conferred therein.

"Witness our hands this ——— day of ———, 1919.

"[Signed]   J. C. Campbell
   "        R. E. Wade
   "        C. L. Holden."

The group of interest holders were referred to as the "Iowa-Burk Syndicate." During the period of the syndicate's existence, various holders of certificates or interests transferred them to others. The books of the syndicate showed some of the transfers, but not all. After the $30,000 was raised by the trustees, drilling commenced, and about June, 1919, oil was discovered. J. C. Campbell, J. M. Burns, and R. E. Wade continued to act as trustees and managers of the property, which was operated until November, 1919. They had charge of the affairs of the syndicate, sold oil, kept books, and borrowed money. Shortly after November, 1919, the lease was sold for $300,000, which amount, less about $40,000 kept as a reserve, was distributed to those who were interested in the lease.

Prior to the sale of the lease, the trustees had gone to Washington to ascertain whether, if the sale were made, the proceeds would be taxed as corporate income. They were informed by the solicitor of the Bureau of Internal Revenue that they were not doing business as a corporation or association, but as a partnership or joint venture, and would be justified in consummating the sale upon that theory.

On March 10, 1925, the Commissioner of Internal Revenue determined that the Iowa-Burk Syndicate was taxable as an association, under title 1, § 1, of the Revenue Act of 1918, c. 18, 40 Stat. 1057, and that there was due for the year 1919, a tax amounting to $142,672.28, including a penalty of $47,557.43, which penalty was later waived. J. C. Campbell, one of the trustees, went to Washington upon being notified of this assessment, and turned over all of the undistributed assets of the syndicate, which amounted to $30,000 in cash and a claim of about $10,000 against R. E. Wade, one of the trustees, as an offer in compromise. The offer was not accepted in settlement of tax liability, but the $30,000 was retained by the government, with the consent of the trustees.

On November 12, 1926, the Commissioner notified each of the persons to whom had been distributed the proceeds of the sale of the lease that he proposed to assess each transferee in an amount equal to the liquidating dividends which he had received. The assessment of Mr. Burns was $29,625.

From the determination of the Commissioner, the transferees appealed to the Board of Tax Appeals, which reached the conclusion that they were not liable for the tax.

The Board found that the syndicate owned or controlled only an undivided one-half of the lease, and that therefore one-half of the purchase price did not constitute any

income of the syndicate, but belonged to the original owners of the lease, as tenants in common of an undivided one-half interest. The Board also reached the conclusion that, since no formal meeting of the interest holders for the election of trustees, as provided for in the trust agreement, was held after the $30,000 was raised, the trust then terminated and the interest holders became vested with the title to the undivided one-half of the lease which was conveyed to the trustees, that those who subsequently managed the property, as trustees or managers, did so by common consent and virtually as the representatives of each individual owner, and that there was no association to be taxed, but merely a group of cotenants.

The government contends that the findings of the Board are contrary to the undisputed facts, that the facts require a holding that the syndicate was an association and was taxable as such, and that the liquidating dividends of Mr. Burns represented income derived by the association from the sale of the lease and taxable to the association.

Since this petition to review relates only to the liability of Mr. Burns, it becomes necessary to determine whether what he received out of the proceeds of the sale of the lease was income of the syndicate. If he was not a member of the syndicate, but merely the owner of an undivided one-quarter of the retained undivided one-half of the lease, then what he received never at any time belonged to the syndicate.

The trust agreement purports to convey only an undivided one-half of the lease to trustees for the benefit of purchasers of undivided interests, and refers to the retention by the original owners of the other undivided one-half.

The government's theory, however, is that, since the trust agreement provided for a meeting of all those interested in the lease, after the $30,000 was raised, for the purpose of electing trustees, and since the books of the syndicate showed Mr. Burns to be an interest holder, and since the trustees acted both for those who furnished the $30,000 and for the original owners of the lease, it must be held that Burns was a member of the syndicate, that the syndicate took over the entire lease, and that the entire purchase price when the lease was sold belonged to the syndicate.

Mr. Burns' testimony is to the effect that he never furnished any part of the $30,000 raised for the purpose of drilling, and that no certificate was ever issued to him. It is asserted that he is shown upon the books of the syndicate as an interest holder solely for the purpose of convenience in accounting.

There appears to be very little to justify a finding that the original owners of this lease parted with more than an undivided one-half interest, or that those who invested the $30,000 under the terms of the trust agreement ever acquired any rights to the undivided one-half of the lease retained, or any interest in the proceeds of the sale of that portion of the lease. The trustees to whom was conveyed the undivided one-half of the lease to be sold in order to develop the property, apparently operated the entire lease for the benefit of all who were interested in it, accounting to the original owners for their undivided one-half, and to the syndicate for its undivided one-half. Therefore one-half of the $300,000, for which the lease was sold resulted from the sale of the undivided one-half belonging to the syndicate, and the balance from the sale of the undivided interest retained by the original owners. The most that the government can claim is that the original owners permitted the syndicate to manage and control the entire leasehold, and, by so doing virtually made themselves members of the syndicate. There is, however, a distinction between being a member of an association which owns an oil lease and being the owner of an undivided one-half of an oil lease managed by an association which owns the other undivided one-half. In one case, whatever income is derived from the lease becomes the income of the association, whereas in the other case only one half of the income belongs to the association, and the other half it collects as agent or trustee for its cotenant. Certainly one who is a cotenant of a corporation or an association does not render himself liable to pay taxes as a corporation because he permits his cotenant to manage his property and account to him for his share of the profits.

The question of the relation which the original owners of the lease bore to the syndicate is a question of fact.

In New York State v. Roberts, 171 U. S. 658, 664, 19 S. Ct. 58, 60, 70, 43 L. Ed. 323, the court said: "Nor can we consider the further contention that portions of the business which were made the basis of the assessment were improperly treated as business of the corporation, whereas they should have been regarded as pertaining to the personal transactions of Mr. Clay, the company's agent. The true relation of Mr. Clay to the corporation's business was one of fact, in respect to which a hearing was afforded to

the corporation, and this court is in no position to enter into such an inquiry."

The finding of the Board of Tax Appeals to the effect that only an undivided one-half of the lease belonged to the syndicate and hence only one-half of the proceeds of the sale were taxable to it, having substantial evidence to support it, is binding upon this court. Feeders' Supply Co. v. Comm'r (C. C. A. 8) 31 F.(2d) 274, 278; Mastin v. Comm'r (C. C. A. 8) 28 F.(2d) 748, 751; Denver Live Stock Com. Co. v. Comm'r (C. C. A. 8) 29 F.(2d) 543, 544; Kendrick Coal & Dock Co. v. Comm'r (C. C. A. 8) 29 F.(2d) 559, 563; Conklin-Zonne-Loomis Co. v. Comm'r (C. C. A. 8) 29 F.(2d) 698, 700; Burkett v. Comm'r (C. C. A. 8) 31 F.(2d) 667, 669; St. Paul Abstract Co. v. Comm'r (C. C. A. 8) 32 F.(2d) 225, 226; Twin City Tile & Marble Co. v. Comm'r (C. C. A. 8) 32 F.(2d) 229, 231; Powers Mfg. Co. v. Comm'r (C. C. A. 8) 34 F.(2d) 255; Franciscus Realty Co. v. Comm'r (C. C. A. 8) 39 F.(2d) 583, 584; Edson v. Lucas, Comm'r (C. C. A. 8) 40 F.(2d) 398, 403, 404; American Sav. Bank & Trust Co. v. Burnet (C. C. A. 9) 45 F.(2d) 548, 549.

Since the respondent received no part of the income which belonged to the syndicate, it is not necessary to determine whether it was or was not taxable as an association.

The decision of the Board of Tax Appeals as to the liability of the respondent was correct and is affirmed.