**JOHNSON, DRAKE & PIPER, Inc., v. HELVERING, Commissioner of Internal Revenue.**

No. 9758.

Circuit Court of Appeals, Eighth Circuit.

Feb. 8, 1934.

Leland W. Scott, of Minneapolis, Minn. (Junell, Driscoll, Fletcher, Dorsey & Barker, of Minneapolis, Minn., on the brief), for petitioner.

John MacC. Hudson, Sp. Asst. Atty. Gen. (Sewall Key, Sp. Asst. Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of decisions of the Board of Tax Appeals which redetermined deficiencies in the income taxes of petitioner for the years 1926 and 1927 at the amounts respectively of $7,517.69 and $705.89. The amounts were those found by respondent Commissioner.

The Board of Tax Appeals has filed an opinion, but has made no separate findings of fact and conclusions of law. We record our disapproval of this practice.

From the opinion we cull the following facts: The petitioner is a corporation with its principal office in Minneapolis, Minn. The Drake Company is a Minnesota corporation organized in 1925 for the purpose of buying and selling properties in Florida. During the taxable years 1926 and 1927, petitioner owned 15.7778 shares of a total 79.9999 shares of Drake Company stock. On June 19 and December 11, 1925, petitioner and other shareholders of the Drake Company loaned that company $392,000, for which the Drake Company issued its interest-bearing promissory notes payable on or before three years after date. Petitioner loaned $100,940 of the total amount.

In the latter part of 1925 and in 1926, real estate values in Florida greatly declined. On December 20, 1926, the directors of the Drake Company, at a special meeting, adopted a resolution containing the following:

"Whereas it appears from reliable appraisals by disinterested parties, that the assets of the Company have shrunk during the year 1926, to the extent of $319,000.00, and that the true value of the assets is $319,000.00 less than the figures shown on the books of the Company, and

"Whereas it is desirable to reduce the liabilities of the Company to a figure not exceeding the assets thereof, and

"Whereas various stockholders of the Company hold notes of the Company to the amount of $392,000.00,

"Now, Therefore, Be It Resolved, That the Company, by and through its President or one of its Vice-Presidents, request the stockholders owning and holding said notes of the Company to the amount of $392,000.00, to surrender such notes and accept in lieu thereof notes of the Company which shall in each instance amount to 18.622 per cent. of the present outstanding notes, such new notes, to amount in the aggregate to $73,000.00, said sum of $73,000.00 being the difference between the aggregate amount of the notes now outstanding, to-wit, $392,000.00, and the depreciation, to-wit, $319,000.00, in the assets of the Company;

"And Be It Further Resolved that if and when the stockholders of the Company holding the present outstanding notes of the Company, shall agree to accept such reduced notes, that the President or Vice-President, and the Secretary or Assistant Secretary of this Company do, and they are hereby authorized to accept and cancel any of the present outstanding notes of the Company, and to issue for and on behalf of the Company

new notes in accordance with the terms of this Resolution."

The stockholders of the Drake Company accepted the terms of the resolution. The $392,000 in notes were surrendered to the company and canceled, and new notes were issued to the stockholders in the aggregate amount of $73,000. At the time of the resolution, petitioner held notes of the Drake Company in the amount of $87,111.12. Petitioner surrendered these and received in return new notes in the amount of $16,222.22.

As of December 31, 1926, the Drake Company reduced the value of its asset account by $319,000, charging this amount against "donated surplus" created by the cancellation of its notes payable in that amount.

In its tax return for 1926, petitioner deducted as a loss $70,888.90 (the difference between the amount of the notes surrendered and the new notes received in lieu thereof); and since the computations of gross income and deductions for the year 1926 resulted in a net loss, petitioner in its corporation income tax return for 1927 deducted from its gross income the net loss alleged to have been sustained for the year 1926.

The Commissioner disallowed the deduction taken in 1926 on account of the notes, on the ground that the amount was a capital contribution to the Drake Company and not a deductible loss or bad debt. This disallowance by the Commissioner resulted in net in-

come instead of net loss for 1926 to the petitioner.

Other facts stated by the Board of Tax Appeals in its opinion will be adverted to later.

The question presented is: Was the amount of $70,888.90, which was the net amount of notes of the Drake Company which petitioner in 1926 surrendered to that company for cancellation and charged off on its own books, an allowable deduction in computing net income for 1926, within the meaning of section 234 (a) (4) and (5) of the Revenue Act of 1926 (26 USCA § 986 (a) (4, 5)?

The deduction sought for 1927 of a net loss sustained in 1927 is dependent solely upon the validity of the deduction claimed for 1926. If the amount of the notes canceled is not allowable as a deduction for 1926, then there is no net loss for which a deduction may be made for 1927.

The statutes and the department regulations which are deemed relevant are set out in the margin.[1]

■ The Board of Tax Appeals has stated in its opinion that the Drake Company was not commercially insolvent in December, 1926; and that it was not then contemplating liquidation. Petitioner attacks the former of these findings, but, under the established rule, we do not disturb it if there is any sub-

---

[1] Revenue Act of 1926, 44 Stat. 9, 26 USCA § 986:

"Sec. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 [section 981 of this title] there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * * The basis for determining the amount of the deduction for losses sustained shall be the same as is provided in section 204 [section 935 of this title] for determining the gain or loss from the sale or other disposition of property;

"(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the commissioner may allow such debt to be charged off in part."

Treasury Regulations 69.

"Art. 49. Forgiveness of indebtedness. The cancellation and forgiveness of indebtedness may amount to a payment of income, to a gift, or to a capital transaction, dependent upon the circumstances. If, for example, an individual performs services for a creditor, who in consideration thereof cancels the debt, income to that amount is realized by the debtor as compensation for his services. If, however, a creditor merely desires to benefit a debtor and without any consideration therefor cancels the debt, the amount of the debt is a gift from the creditor to the debtor and need not be included in the latter's gross income. If a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation."

"Art. 151. Bad debts.—Bad debts may be treated in either of two ways—

"(1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or

"(2) By a deduction from income of an addition to a reserve for bad debts. * * *

"Where all the surrounding and attending circumstances indicate that a debt is worthless, either wholly or in part, the amount which is worthless and charged off or written down to a nominal amount on the books of the taxpayer shall be allowed as a deduction in computing net income. * * *

"Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction."

"Art. 544. Contributions by Shareholders.—Where a corporation requires additional funds for conducting its business and obtains such needed money through voluntary pro rata payments by its shareholders, the amounts so received being credited to its surplus account or to a special capital account, such amounts will not be considered income, although there is no increase in the outstanding shares of stock of the corporation. The payments in such circumstances are in the nature of voluntary assessments upon, and represent an additional price paid for, the shares of stock held by the individual shareholders, and will be treated as an addition to and as a part of the operating capital of the company."

stantial evidence to support it, Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Burnet v. Burns, 63 F.(2d) 313 (C. C. A. 8); Conklin-Zonne-Loomis Co. v. Commissioner, 29 F.(2d) 698 (C. C. A. 8); Mastin v. Commissioner, 28 F.(2d) 748 (C. C. A. 8); and we think there is.

The continuance of the Drake Company in business for nearly two years after the surrender and cancellation of the notes in question; the absence of any showing of default in payment of maturing obligations; the fact that the notes mentioned were not due for upwards of two years; the fact that petitioner and other stockholders still retained their stock while canceling some of the Drake Company notes, all have some tendency to show that the Drake Company was not commercially insolvent in December, 1926.

The resolutions of the board of directors did not declare or show the Drake Company to be commercially insolvent, nor state that the company contemplated liquidation; but simply stated that there had been a shrinkage in the book value of the assets. These assets were represented by the outstanding stock of the company, some of which was in the hands of petitioner.

I. The statute (quoted in the margin) provides for two classes of deductions, losses sustained; and worthless debts.

Deductions for losses are allowed only where there has been actual loss sustained within the year; and this is generally established only upon a sale or other final disposition of property. United States v. S. S. White Dental Co., 274 U. S. 398, 47 S. Ct. 598, 71 L. Ed. 1120.

It does not clearly appear that there was any loss sustained by petitioner at the time the notes were canceled. The Drake Company continued to do business and petitioner retained its stockholding interest in the company, which was not commercially insolvent, according to the finding of the Board of Tax Appeals.

A loss might or might not occur when petitioner should make a sale of its stock.

What the extent of the loss, if any, would be could best be determined when a sale should be made of the stock. Until that time, the cancellation of a debt in whole or in part would ordinarily be considered as additional capital contributed by the stockholder, the same as if an assessment had been made and paid on the stock. Such, in effect, has been the holdings in many of the cases in which

similar matters have been considered. Mastin v. Commissioner, supra; Burns v. Commissioner (C. C. A.) 31 F.(2d) 399, certiorari denied 280 U. S. 564, 50 S. Ct. 25, 74 L. Ed. 618; First Nat. Bank in Wichita v. Commissioner (C. C. A.) 46 F.(2d) 283; Kistler v. Burnet, 61 App. D. C. 135, 58 F.(2d) 687; Haft v. Commissioner, 20 B. T. A. 431; Scoville v. Commissioner, 18 B. T. A. 261; Vaughan v. Commissioner, 17 B. T. A. 620; Floyd v. Commissioner, 11 B. T. A. 903; Altmayer v. Commissioner, 10 B. T. A. 1091; Appeals of Brown and Thomen, 9 B. T. A. 965; Paxton v. Commissioner, 7 B. T. A. 92; Appeal of Lutz, 2 B. T. A. 484.

This view is also supported by the regulations of the Treasury Department. (See Regulations cited in the margin.)

Regulations under prior and subsequent Revenue Acts have been similar; Regulations 45, articles 51 and 543; Regulations 62, articles 50 and 544; Regulations 65, articles 49 and 544; and Regulations 74, article 64; and in each of the several Revenue Acts the pertinent provisions have been reenacted without substantial change. Section 234 (a), Revenue Acts of 1918, 1921 (40 Stat. 1077 and 42 Stat. 254), and Revenue Acts 1924 and 1926 (26 USCA § 986); and section 23 (j), Revenue Act of 1928 (26 USCA § 2023 (j).

These Regulations have received departmental interpretation in accordance with the views which we have above expressed. I. T. 1168, I—1 Cumulative Bulletin, p. 194; I. T. 1288, I—1 Cumulative Bulletin, p. 195; I. T. 1751, II—2 Cumulative Bulletin, p. 142.

Such departmental regulations and rulings, in view of re-enacted legislation, have a persuasive force. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; Heiner v. Colonial Trust Co., 275 U. S. 232, 235, 48 S. Ct. 65, 72 L. Ed. 256; Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563; First Nat. Bank in Wichita v. Commissioner, supra; Kistler v. Burnet, supra.

II. Nor do we think that the evidence conclusively showed that the debt owed by the Drake Company to petitioner was "bad" or worthless to the extent of $70,888.90, within the meaning of the statute.

The Board of Tax Appeals has stated as a fact that "as of December 31, 1926, the Drake Company was not commercially insol-

vent and the note holders had not suffered a complete loss of the face amounts surrendered and cancelled."

It must be remembered that the notes had yet more than two years to run; and that the stockholders of the Drake Company voluntarily surrendered part of them for cancellation for the specific purpose of reducing the liabilities of the. company to an amount not exceeding the value of the assets.

It is true that petitioner acquiesced in the resolutions passed by the directors of the Drake Company, acted in accordance therewith, and charged the canceled notes to "profit and loss" on its own books; but the resolutions did not declare any debts worthless, and the canceled notes were charged by the Drake Company on its books to "donated surplus." Four of the five directors of the Drake Company were officers of the petitioner company.

It is further to be noted that the surrender of the notes by petitioner was made at the solicitation of the debtor company; that all other note holders, who were also stockholders, surrendered for cancellation a proportionate part of their notes; that so far as the record shows, only stockholders scaled down their debts, and they scaled them down in proportion to their stockholdings; that the plan seems unduly elaborate for the mere charging off of worthless debts, but it appears exactly suited to a contribution of capital by stockholders.

■ Of course, it is true that a debt may be bad in part only, and, to the extent that it is ascertained to be bad, it may ordinarily be deducted from the gross income of the creditor. It is also true that under exceptional circumstances a debt represented by a promissory note may be ascertained to be worthless before the maturity of the note. But where the creditor of a corporation is also a stockholder, a decrease by cancellation in the debt owed him by the corporation will ordinarily be reflected to some extent in an increase in the value of the stock held; and the worthlessness of a debt, whether in whole or in part, must be ascertained by the creditor as of the time when the debt is canceled and charged off; and it should appear that the debt was canceled for that reason.

The Board of Tax Appeals failed to find from the evidence that the canceled notes were worthless in the judgment of the petitioner. Such finding was essential. United States v. S. S. White Dental Company, supra. On the contrary, the Board of Tax Appeals expressly refused to find that the notes held by petitioner against the Drake Company were ascertained by petitioner in 1926 to be worthless, even to the extent to which they were canceled. Although the evidence might support such a finding, we do not think it compels it.

■ Under all these circumstances, it is not our province to reverse the decision of the Board of Tax Appeals merely because, on the evidence, we might have made different findings. The Board of Tax Appeals is the established fact-finding body.

That there are cases in which similar deductions have been allowed under facts somewhat akin to those in the case at bar must be conceded. Some of such cases may be distinguished.

As to the case of Deeds v. Commissioner (C. C. A.) 47 F.(2d) 695, 696, upon which petitioner relies, it is sufficient for present purposes to call attention to two facts stated in the opinion of the court in that case, and upon which stress was placed: (1) "The company [whose debt was cancelled in part] was insolvent in the commercial sense that it was wholly unable to meet its obligations as they matured in the ordinary course of business"; and (2) "payment of the notes held by petitioners was demanded * * * in response to which the company advised the petitioners that it was insolvent and unable to pay."

In the case at bar, the Board of Tax Appeals has found that the Drake Company was not commercially insolvent; and the notes held by petitioner were not due for more than two years.

As to the case of Selden v. Heiner (D. C.) 12 F.(2d) 474, while not minimizing the support lent to petitioner by the case, it may be noted that at the time of the cancellation of the debt owed to plaintiff by the debtor corporation, the corporation had already decided to stop manufacturing operations, salvage what could be obtained from the plant, and consider the business a loss. It was decided to discontinue business and liquidate.

No such state of affairs existed in the case at bar.

In the White Dental Company Case, supra, one of the important facts was a sequestration of the property of the debtor company by an enemy country, which left the corporation "without property or assets of any kind."

The investment of the White Dental Company in the subsidiary German corporation

was carried on its books at more than $130,-000. This investment was represented by both capital stock and an open account. After the seizure of the German corporation by the German government, the White Dental Company charged off as a loss the entire amount of its investment, as shown by its books, and in making its income tax return for the year 1918, said company deducted from gross income the amount of its investment in the German corporation; in other words, its open account and the stock which it held in the German corporation. ·

In the case at bar, there was no such situation. The Drake Company had assets and continued to carry on business for about two years; and petitioner retained its stock in the Drake Company.

The court, in its opinion in the White Dental Company Case, said (page 401 of 274 U. S., 47 S. Ct. 598, 600):

"The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. New York Ins. Co. v. Edwards, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859; cf. Miles v. Safe Deposit Co., 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (article 141, 144), or caused by its destruction or physical injury (article 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151)."

The court further said (page 402 of 274 U. S., 47 S. Ct. 598, 600):

"No distinction is urged by the government between respondent's investment in the stock of the German company and in its open accounts. It is equally apparent that the stock after the seizure was as worthless as the obligations of the German company and was deductible under article 144 on the same basis as bad debts."

In the case at bar, petitioner and the other stockholders of the Drake Company retained their stockholdings.

In the case of Peyton Du-Pont Securities Co. v. Commissioner, 66 F.(2d) 718, the Circuit Court of Appeals for the Second Circuit reversed the decision of the Board of Tax Appeals and directed deduction to be made on account of notes canceled by the taxpayer under facts similar to those in the case at bar.

Other cases tending to support petitioner's contentions are: Harris v. Commissioner, 19 B. T. A. 895; Robert Smith Corporation v. Commissioner, 21 B. T. A. 1400.

Notwithstanding the foregoing cases and others cited by petitioner in support of its contentions, we have, after careful consideration, reached the conclusion that the holding of the Board of Tax Appeals to the effect that the petitioner had not, as of December 31, 1926, suffered a complete loss of the face amount of the notes surrendered by it and canceled; and that the notes so surrendered were not worthless, are not without any substantial support in the evidence, and, therefore, should not be disturbed by this court.

The decision of the Board of Tax Appeals is accordingly affirmed.