COMMISSIONER OF INTERNAL REVE-
NUE v. McILVAINE et al.
No. 5327.

Circuit Court of Appeals, Seventh Circuit.
July 19, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to Atty Gen., for petitioner.

John P. Wilson and Clay Judson, both of Chicago, Ill., for respondents.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

Petitioner seeks review of decisions of the United States Board of Tax Appeals denying petitioner's contention that the taxable estate comprises a single instead of three trusts. As a single trust the income tax rate for the years in question would have been carried into the higher brackets sufficiently to make the taxes in controversy larger by about $30,000 than if taxed as three trusts; and it is for this difference that the Commissioner assessed deficiencies for the respective years. The Board found there were three trusts, and no deficiencies.

March 19, 1913, John P. Wilson conveyed to his son, John P. Jr., and William B. McIlvaine, in trust, certain securities for the benefit of his three children, John, Martha, and Anna. The trustees were authorized to receive the entire income, and to sell the securities and reinvest the proceeds in accordance with the written directions of any two of the beneficiaries; and to accumulate the net income for fifteen years unless the period be shortened by the beneficiaries with the approval of the grantor if living; and after that time to distribute all net income in equal shares to the beneficiaries as provided. Provision was made that the instrument might be altered, changed, or modified to any extent by the three children with the approval of the grantor if living.

June 19, 1919, an amendment was made to the trust instrument providing that the trust property should be divided into three separate and equal trusts, each part to be separately held in trust by the trustees severally for one of the donor's said three children, and that the trustees should assign an undivided one-third interest in all the property they then held in trust for each of the children; and that all additions to the trust estate should be divided equally between the separate trust estates unless it be otherwise directed in the instrument of

gift; and that the net income of the three trust estates should be paid to the beneficiaries entitled thereto upon the request of any two of the original beneficiaries, the income which was not paid out to be added to the principal of the trust fund from which it was derived.

December 1, 1920, a second amendment was made which canceled certain parts of the amendment of June 19, 1919, and substituted for it provisions which are the same as paragraphs 1 and 2 of article III of a third amendment which was duly made December 6, 1920. Article III of the third amendment is set forth in the margin.*

■ It may be assumed that the trust instrument as originally drawn created a single trust. Concededly the trust, by its terms and with the consent of the beneficiaries and of the donor, if living, might be altered and amended in any of its provisions, so that there might be constituted any number of trusts; and it is unquestioned that the motive for setting up a larger number of trusts is not here material. So even

---

* "(1) The trust funds and estate held under this Trust Indenture shall be kept divided by said Trustees into three (3) equal parts, each of which shall be held and administered as a separate trust for the benefit respectively of one of the three children of said party of the first part, hereinbefore named, subject, however, to the conditions, limitations and provisions hereinafter set forth.

"A separate account shall be kept by the said Trustees of each of said trusts, and the investments in each of said separate trusts shall at all times be kept the same, both in kind and quantity, as near as may be, and to that end joint investments may be made by the Trustees on behalf of said separate trusts, each trust contributing an equal amount of the funds used in making such joint investment.

"Any and all additions to the trust estate held under this Indenture (other than those from the accumulation of income from the separate trust estates) shall be divided between said separate trust estates held under this Indenture, in equal shares or parts, except and unless it shall be otherwise directed in the instrument of gift making an addition to the trust estate held under this Indenture.

"Any property belonging to said trust estate may be taken and held for convenience in the name of a nominee of the said Trustees, or in the name of either of said Trustees, or in the name of said Trustees as joint tenants, without the addition of the word 'Trustee' or 'Trustees,' or words indicating that such property is held in trust.

"(2) The said Trustees shall in each year pay out as much of the net income from each of said separate trusts to the beneficiaries from time to time entitled to share therein as shall during such year be requested or directed by one or more instruments in writing, signed by a majority in interest of the beneficiaries then entitled to share or participate in any distribution made of the income of all of said trusts. But equal payments must be made out of the net income from each of said separate trusts, to the end that said several separate trusts may be maintained on a basis of equality in amount so far as practicable.

"So much of the net income received in any year from each separate trust estate as shall not have been paid out during such year under the above clause, shall be added to and form a part of the principal of the separate trust estate from which it was derived; provided, however, that said Trustees shall in each year pay out for charitable uses and purposes so much of the net income of said trusts as shall be requested by an instrument in writing signed by said Martha Wilson, John P. Wilson, Jr., and Anna W. Dickinson, or the survivors or survivor of them, which payments shall be made in equal amounts from each of said separate trusts, and the Trustees shall not be under any obligation to inquire as to the nature of the uses for which said payments are requested to be made, but shall be free from any liability by reason of any payment made in pursuance of a written request signed as aforesaid.

"Any request in writing for the distribution of any part of the income of any of said trusts may be signed by the guardian of any beneficiary who may be a minor or under disability, with like effect as though such request had been signed by the beneficiary in person, free from disability.

"(3) From and after the death of any one of the original beneficiaries under this Indenture, the net income which he or she would have been entitled to receive if living, shall be paid to the issue of said party of the first part, in accordance with any directions in regard thereto contained in the last will and testament of such deceased beneficiary, and in default of any such direction or appointment then to the issue surviving from time to time, if any, of such deceased beneficiary, per stirpes; and in default of such issue then to the issue surviving from time to time of the said party of the first part, per stirpes."

though the sole purpose of the changes which were made was to bring about a reduction in the federal tax upon the income from the trust property, this would not transgress any right of the Government. The sole question is whether, under the amendments made, there were three trusts.

That it was the definite intent of the donor by these amendments to set up three separate trusts is too plain for controversy. In the amendments he repeatedly so states; and unquestionably the beneficiaries, in consenting to the amendments, did so with the intent and under the assumption that, whatever may have been the previous status, thereafter there were to be three separate trusts. While the intent of the parties is a prime factor in construing such an instrument and in case of doubt this is accorded high evidentiary value, yet the instrument itself, where it is sufficiently plain, must determine its character and scope. Colton v. Colton, 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138; State Savings Loan & Trust Co. v. Commissioner, 63 F.(2d) 482 (C. C. A. 7); Hubbell v. Burnet, 46 F.(2d) 446 (C. C. A. 8).

True, there was here no provision for physical division of the trust property by segregating each portion of it. Under the terms of the amended instrument the corpus of each of the three trusts consisted of an undivided one-third interest. The physical property remained undivided in the possession of the trustees, who were the same for each of the three trusts. We perceive no valid reason why this may not be so, and it is well settled by authority that an undivided interest in real or personal property may properly be the subject-matter of a trust. Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481; Starbuck v. Farmers' Loan & Trust Co., 28 App. Div. 272, 51 N. Y. S. 58; Gurnett v. Mutual Life Ins. Co., 356 Ill. 612, 191 N. E. 250; Bogert Trusts and Trustees, Vol. 1, pp. 351 and 352; Tentative Draft No. 1 of the Restatement of the Law of Trusts, § 73.

It is well settled that separate and several trusts may be created by the same instrument, and be administered by the same trustees. DeVer H. Warner, Trustee, v. Commissioner, 7 B. T. A. 1292 [affirmed (C. C. A.) 26 F.(2d) 1023]; Lynchburg Trust & Savings Bank v. Commissioner (C. C. A.) 68 F.(2d) 356; Carruth v. Carruth, 148 Mass. 431, 19 N. E. 369; Claflin v. Dewey, 177 Mass. 166, 58 N. E. 581.

Just what mode may or should be adopted for possessing and conserving the physical property which is thus subject to the separate trusts in undivided interests is not here of necessary significance. In this case, however, the trustees upon adoption of the amendments assumed to set up separate individual trust accounts for each of the three beneficiaries of the supposed separate trusts, and charged unto themselves as trustees severally for the separate beneficiaries an undivided one-third of the property and funds granted by the donor, and kept the accounts accordingly. What more they could have done to carry out the donor's intent that there should be three separate and distinct trusts is not readily manifest—unless indeed they made physical division of the property, which was not essential to the separate trust estates.

In our judgment it was, after the amendments, as if in the very first instance the donor had, by separate instruments, conveyed to trustees, whoever they might have been—the same or different persons—an undivided one-third of the property in trust for the several separate beneficiaries. In such case we do not conceive that it would have made any difference that the three trusts thus created were in all respects equal in value and in treatment, and subject to identical conditions and stipulations, and were to be so kept, as was here the case.

If the conditions and terms of the several trusts so created had differed radically from one another, and there had been different trustees, there would have been no question but that the trusts were separate and several. But is this different if the terms of each of the trusts which the donor thus undertook to create are identical and the trustees the same? This of itself would not amalgamate into one trust that which would otherwise be three.

But we are concerned with income rather than with the physical possession of the property which produces it. While the property subject to the three trusts actually remained in the physical custody of the same persons who became the trustees for each of the three trusts, this was only for the purpose of holding, investing and conserving it, and for receiving and distributing the income therefrom to the three trusts which the amended instrument created. In this sense these persons, call them trustees, agents, custodians, or what not, in holding and collecting the income of the

undivided property, and receiving the income therefrom, were merely the conduit through which the income, as it was received, was immediately passed to the three trusts.

■■ In so receiving the income these persons became at once equitably the trustees for its transmittal to the three trusts. In such relation the receipt of the entire income will be deemed in equity the receipt of it for its instantaneous passing to and for the three undivided trust estates. Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530; Burckhardt v. Northwestern National Bank (C. C. A.) 38 F.(2d) 568. This is particularly true here, where these same persons were acting in the two capacities, i. e., of holding and conserving the property and collecting the income therefrom, and of taking unto themselves as the trustees of the three separate trusts, as that income is received, the three undivided thirds of it for and on behalf of each of the three distinct trusts set up under the amended trust instrument.

As above indicated the practice was to hold the trust property undivided, and we have treated the matter as though this were required by the trust agreement, reaching the conclusion that even if so required there were three trusts instead of but one. But article III of the third amendment specifies:

"The trust funds and estate held under this Trust Indenture shall be kept divided by said Trustees into three (3) equal parts, each of which shall be held and administered as a separate trust for the benefit respectively of one of the three children of said party of the first part, hereinbefore named, subject, however, to the conditions, limitations and provisions hereinafter set forth.

"A separate account shall be kept by the said Trustees of each of said trusts, and the investments in each of said separate trusts shall at all times be kept the same, both in kind and quantity, as near as may be, and to that end joint investments may be made by the Trustees on behalf of said separate trusts, each trust contributing an equal amount of the funds used in making such joint investments."

It does not appear that those in custody of the property literally followed the direction by physically dividing the trust property in the manner specified. Instead of segregating the property as directed and making similar investments for the three trust estates, or joint investments, they followed the practice above indicated of permitting the trust property to remain unsegregated. In all probability literal compliance with the letter of the trust instrument could have been required; but as the financial result to the beneficiaries seems to have been the same, and no question of malfeasance or nonfeasance appears to have arisen, and since the question here concerns not custody or administration of the trust property, but involves only the income which, as it was received, passed at once to these persons in their capacities as separate trustees of the separate trust estates, we refer to this trust provision mainly as indicating definitely the purpose of the parties that there be three separate trusts, a purpose which to all intents, so far as concerns income and the tax thereon, appears to have been fully effectuated.

Our strong inclination to sustain the reasoning and conclusions herein of the Board of Tax Appeals, as reported in 29 B. T. A. 304, is much tempered by the fact that the Circuit Court of Appeals of the Second Circuit, in Commissioner v. United States Trust Company of New York, Trustee Under Deed of John P. Wilson (C. C. A.) 75 F.(2d) 973, has decided otherwise. This case involved another trust of the same donor with the same beneficiaries as here, originally created about the same date as the one here and subsequently amended at about the same time and in very much the same manner, with some slight but concededly immaterial differences. To the New York trustee the donor conveyed personal property, and subsequent amendments to the trust were made for the declared purpose of creating three separate trusts wherein the three originally named were the several beneficiaries.

After the amendments the same question arose as to whether the federal income tax should be computed upon the basis of a single trust or three separate trusts; and upon the Board's finding and holding that three trusts were created, which were separately taxable, the Commissioner sought review in the Court of Appeals, which determined that there was in fact but a single trust and reversed the decision of the Board.

It would serve no useful purpose to enter upon further discussion of the propositions there and here considered. Suffice it to say that while we regret to differ from that distinguished court, we are satisfied.

that the Board properly reasoned and ruled that here three trusts were created, and the income from each was taxable accordingly and not as a single trust; and that the Board was right in determining there was no deficiency.

The decisions of the Board of Tax Appeals are affirmed.