## COMMISSIONER OF INTERNAL REVENUE v. N. B. WHITCOMB COCA-COLA SYNDICATE.

### No. 8672.

Circuit Court of Appeals, Fifth Circuit.

March 29, 1938.

Lucius A. Buck, Sewall Key, J. Louis Monarch, and Lee A. Jackson, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

John E. McClure, of Washington, D. C., and Pope F. Brock, of Atlanta, Ga., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The Commissioner of Internal Revenue assessed corporation income taxes against N. B. Whitcomb Coca-Cola Syndicate as an association upon its profitable operations in the early months of the year 1930. The subscribers to the Syndicate denied that they were a taxable association, and claimed to have had a joint adventure with a manager, and that they are to be classed under the tax laws as a partnership rather than a corporation. The Board of Tax Appeals held that the Syndicate was not an association, and we agree.

The facts were stipulated. Sixty-five individuals and companies on October 29, 1929, signed an agreement with each other and with N. B. Whitcomb, called manager, which stated that they desired to and did thereby form a syndicate for the purpose of buying and selling shares of the common stock of Coca-Cola Company. It provided (italics ours): "The manager is *authorized* to purchase and sell for the account of *each subscriber* common capital stock of the Coca-Cola Company * * * not to exceed at any time the number of shares set opposite *his name.*" "All stock bought by the manager pursuant to *the authority given* to him *by each of the subscribers* shall be carried by the manager in the Syndicate account, and the subscribers hereto shall *all participate in each purchase or sale* in proportion to their interest in the Syndicate." Each subscriber bound himself to pay in $20 for each share subscribed for by him at the manager's call. When purchases of stock were made, each subscriber was to pay in additionally his pro rata part of the price. The manager was given sole direction and control of the business and transactions of the Syndicate, with broad discretionary powers, except that he could not have in hand at any one time more than one hundred thousand shares unless the subscriptions exceeded that figure, in which case the total number of shares subscribed was to be the limit. The Syndicate was to have a life of ninety days, which the manager could extend for another ninety days, and which a majority of the subscribers could further extend for a total period not more than one year. The manager was not to be liable for error of judgment or mistake of law or fact, but only for gross negligence or wilful default "in the exercise of the powers or authority herein conferred on him." "*Each subscriber ratifies* and assents to, and is bound by, any action of the manager" under the agreement in proportion to his subscribed shares, but not for an amount exceeding the liability arising against him on the number of shares subscribed for by him. Failure of any subscriber to perform is not to affect or release any other subscriber. "Nothing herein contained or otherwise arising shall constitute the subscribers *partners with or agents for one another or for the manager* or render any of them liable to contribute in any event more than the interest in the Syndicate subscribed for by him." On the termination of the Syndicate the manager was to pay off its obligations and distribute the stocks on hand and other assets to the subscribers in proportion to their subscriptions. There was no provision for any certificates of interest to be issued, or for a transfer of interests. Stocks bought were not put in the name of either the manager or the Syndicate, but were left in the broker's hands as security for marginal purposes. Some stocks were pledged to banks to secure funds on better terms. The Syndicate did a large business without profit in

1929, but profitable in 1930, and was closed in less than five months on March 17, 1930.

The subscribers called their enterprise a syndicate. Such aggregations of capital are usually for a limited and temporary operation. Gates v. Megargel, 2 Cir., 266 F. 811. But we are informed by Webster, International Dictionary, that the term is a loose one; that the members may be partners, joint contractors, or in any other relation agreed upon. The relationships must be ascertained by examining the agreement. We think the relationship created between each subscriber and the manager was that of principal and agent. Words of agency occur frequently in the contract. The name "manager" appropriately describes an agent with broad powers. There was no trust in a technical sense, for the manager was not to hold title to any property for the use of others. Each share bought was to be participated in by each subscriber in proportion to his interest in the Syndicate. Each share was thus owned by the subscribers in common. The manager was not the agent of an aggregation of subscribers, that is to say, of an entity, but the authority was expressly to buy and sell the stock "for the account of each subscriber." In a syndicate agreement before the Supreme Court in Sim v. Edenborn, 242 U.S. 131, 135, 37 S.Ct. 36, 37, 61 L.Ed. 199, it was said of the manager that the subscribers created "him their agent to acquire and deal with certain properties, a position of especial trust and confidence." The manager's authority here was not revocable and not alterable by his several principals, but only because they had thus agreed among themselves. The agreement did not create a partnership for there was no mutual agency among the subscribers and no intention to become liable each for the whole debts of the business; partnership was expressly disclaimed. The legal effect of the agreement as a whole was that each subscriber created a general nonrevocable agency in the manager for the period fixed to do what was specified, the property acquired to belong in common to the subscribers. There was a joint adventure undertaken. There was an effort to limit personal liability, but probably as to third persons the effort would be effectual only as it might operate to limit the authority of the manager. The liability on any engagement made by the manager within his authority was the several personal liability of the subscribers. An association which can be taxed as a corporation is organized with more permanency. It owns its property. Its managers are its agents. Its profits and losses are conceived of as its own, the associates as having ownership only in what may finally be distributed to them. A joint adventure is not such. In the Revenue Act of 1932, § 1111(a) (3), 47 Stat. 289, 26 U.S.C.A. § 1696(2), syndicates and pools are expressly mentioned, and classed not as associations taxable as corporations, but with partnerships in which each individual pays his own tax. The enactment we think merely declared the previous law. The Board of Tax Appeals rightly held there was here no such entity as should be taxed as a corporation.

Affirmed.