**McKEAN et al. v. SCOFIELD, Collector of Internal Revenue.**

**No. 9237.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 11, 1940.

HOLMES, Circuit Judge, dissenting.

R. N. Gresham, of San Antonio, Tex., for appellants.

Lee A. Jackson, Sp. Asst. to the Atty. Gen., and W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

There were five suits filed in the district court against the Collector of Internal Revenue to recover additional taxes exacted for the year 1933. Each suit was brought by A. J. McKean, Sr., A. J. McKean, Jr., and E. B. McKean as trustees, but as trustees for different beneficiaries and under a different deed of trust in each case. The additional tax was assessed on the separate returns of each trust by considering the five trusts, along with five other similar trusts relating to other property, as constituting an association taxable as a corporation. The court consolidated the cases, and a jury being waived, the judge found the facts, held that they showed an association, and denied recovery. This appeal results.

The principal facts are that A. J. McKean, Sr., and his wife had numerous and valuable separate and community properties in Texas. The wife died in October, 1930, devising her interests to their children A. J. McKean, Jr., E. B. McKean, Lucille M. Ponder and Myrtle M. Smith. These children were all married. Some already had children. To avoid questions about the ownership in settling Mrs. McKean's estate, to obviate a division, to provide for the family welfare, and to facilitate the management of the property, the trusts in controversy were created. The oil properties were put together, giving rise to the "oil trusts", and the remaining property went into the "general trusts". By conveyances joined in by the father and four children each became the owner of a one-fifth undivided interest in common in each group of properties. Standing thus as equal owners in common, each of them, on the same day by a separate deed conveyed his undivided fifth interest in the oil properties to the father and two sons as trustees, and by five other deeds each dealt similarly with the remaining general properties. There thus arose five oil trusts and five general trusts, each grantor having created an oil and a general trust for the benefit of himself or herself and descendants according to the limitations of the trust deeds. Each trust had the same trustees, and their powers were in practically identical terms, including full management and control, sale, lease, investment and reinvestment and partition. A compensation of $720 per year was fixed in each trust. The net income of each was to be distributed annually to the beneficiaries of that trust, but with power to set up a reserve or surplus. On the death of a trustee the survivors were to continue, but on the death or disability of all three a named bank was to be trustee. The trusts created by the four children are to terminate five years after the death of the father, but the oil trusts and those created by the father are to terminate at a different time. Each trust requires its trustees to keep proper books with right of inspection by its beneficiaries, and the trustees are absolved from personal liability except for

dishonesty or wilful breach of trust. Each beneficiary is prohibited from selling or incumbering any part of the trust estate or its income. There are intricate limitations over on the death of the grantor during the trust period, with monthly payments of income to beneficiaries; and if the monthly payment does not equal $100, that much is to be paid by encroaching on the corpus, but not so as to impair its solvency. In case of sickness or other urgent necessity of a beneficiary the trustees have authority to pay over as much as in their opinion is adequate to relieve the misfortune.

There is no provision in any trust deed for cooperation with or recognition of any other trust. In point of practice, however, the trustees being identical and having charge of interests in the same property, have dealt with and for each trust in the same way, have kept but one bank account and one set of books, until distributions were made, or new investments or sales, when entries were made on the separate accounts of each trust. The testimony is that the trustees did not consider themselves bound to invest for all the trusts in the same property but had done so to avoid criticism if one investment should turn out better or worse than another. There have been no partitions. The trustees have done considerable business in the oil trusts, and ranching and farming in the general trusts, and have bought and sold properties, and speculated profitably in wheat and cotton on the exchange. In the tax year 1933, the oil trusts made and returned separately net income. There was no net income on the returns of the general trusts.

The income tax laws recognize a trust as a taxpayer and make provisions for taxation of the trust income. These laws also provide another scale of taxation for corporations and say: "The term 'corporation' includes associations, joint-stock companies and insurance companies." Revenue Act 1932, § 1111(a), (2), 26 U.S.C.A. § 1696 (3). The questions when a trust is an association, and who are the associates, were dealt with in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; and Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L. Ed. 275. Each case dealt with a single trust by means of which several owners of property had combined the title and management of their property in the one trust, with substantially the results that would have been attained by conveying it to a corporation for stock therein, and for purely business purposes. There was a unity of ownership achieved by the trust, which in turn created a unified management and control, which could not be affected by a contributor's death, but gave him a beneficial interest which he could sell as in case of a stockholder. Such is not the case here. Each property owner has kept his property separate in ownership, though he has converted it into a trust for the benefit of himself and family. Solicitude for the future of his family is a main purpose of the trust, as is shown by the character of the limitations, the provisions for encroachment on corpus in case of need, and forbidding any beneficiary to transfer or incumber his interest or anticipate the income. That the trusts cover undivided interests in the same properties, that they have the same trustees and identical powers and similar limitations, and that in practice the trustees have dealt with all alike, keeping but one set of books, does not amalgamate or consolidate the trusts or make them one for tax purposes. It was so held even when several such trusts were all created by one grantor and in a single instrument in United States Trust Co. v. Commissioner, 296 U.S. 481, 56 S.Ct. 329, 80 L.Ed 340, and Helvering v. McIlvaine, 296 U.S. 488, 56 S.Ct. 332, 80 L.Ed. 345, affirming 7 Cir., 78 F.2d 787, 102 A.L.R. 252. Each trust is a separate thing. In each the trustees owe a separate duty to its beneficiaries. Though in the tax year and previously these trusts had been carried along together, the harmony might at any time be broken. A widow and children requiring monthly support, sickness or misfortune calling for encroachment on corpus, or even the exercise of the power of partition given in the deed, might call for special management in any trust and cause a complete change of investment. Speculation on margins could probably be stopped by the beneficiaries of one trust, though suffered to continue by others. Nothing in the law, nothing in the trust deeds binds the trusts together, and the fact that the trustees are the same persons and the property undivided estates in the same realty is not enough. In law the trustees are as separate as though they were different individuals. There has been cooperation between the trusts, but no incorporation. There has been confusion of transactions, but the trustees have not formed themselves or their trusts into a new

body which could be called an association, if indeed they could. If five individuals owning each an undivided interest in property cooperate voluntarily in its management, no taxable association results. If they each employ the same agent to manage it the same thing is true. If each conveys his interest in trust for himself and his children only, and not for the other owners, the case is not altered. Nothing which resembles ownership for all, as when conveyance is made to a corporation, has occurred. It was so held of a stock-purchasing syndicate where the syndicate manager was to act for each participant rather than for all. Commissioner v. N. B. Whitcomb Coca Cola Syndicate, 5 Cir., 95 F.2d 596; Everts v. Comm., 38 B.T.A. 1039. See also Burnet, Commissioner v. Burns, 8 Cir., 63 F.2d 313.

It may be conceded that these trustees are engaged in business, so that if the owners in common had conveyed their interests into one trust, or otherwise formed a company to own and manage them, a business association might have resulted. They may have thought and purposed that a harmonious cooperation would be achieved by selecting the same trustees and giving them the same powers. But we think that so long as each owner kept his interest separate, and for the use of his own chosen beneficiaries, with no compulsory cooperation with the others, there arose among the several trusts nothing so like a corporation that it could be held an association taxable as a corporation.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

HOLMES, Circuit Judge (dissenting).

The appellants are trustees in each of ten separate trust agreements, practically identical except as to the beneficiaries. The court below held that the parties to these agreements had associated themselves together for the purpose of carrying on various business enterprises for profit, that the ten trusts had likewise associated themselves in the same manner and for the same purpose, and that said trusts and the parties thereto constituted an association which was taxable as such under the regulations promulgated pursuant to the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C. A. § 1696. This appeal challenges the correctness of that ruling.

The district court found that it was the intention of the parties at the time the trusts were created that the properties of the trusts should be held and managed in concert, as a unit, and as a business operated for profit. It further found that the purpose of creating the ten trust estates was that the title to the property should be vested in trustees, as a continuing body, with centralized management, secure from interruption by death of the beneficial owners, with limited personal liability of the participants, whose beneficial interests would be subject to transfer without affecting the continuity of the enterprise. Findings more in detail were as follows:

On January 1, 1931, A. J. McKean, Sr., and his four children became joint owners of property, which they simultaneously conveyed to the father and two sons as trustees. The corpus of each of the ten trusts was the undivided interest of the named beneficiaries, each of whom, for the duration of the trusts, was prohibited from selling, conveying, or encumbering any part of the trust estate or the income therefrom. The life of each trust, except the senior McKean's, was to extend until five years after the death of the father, A. J. McKean, Sr., and in case any of the children beneficiaries should not be living at that time, the Alamo National Bank of San Antonio, Texas, was designated to continue as trustee for the interest of the heirs of such beneficiaries. The trustee bank should then hold the property in trust for a period of twenty-one years after the death of the last survivor of the four children beneficiaries.

Only one general book of original entry was used for all of the property, both before and after the creation of the trusts. There was no segregation of cash receipts and disbursements according to individual trusts; all income was deposited in, and all disbursements made from, one common bank account. At the end of each year the net worth of each oil trust, determined by dividing the total net worth of all the oil trusts by five, was credited to that trust. This was the only bookkeeping entry segregated according to individual trusts.

The interests of the beneficiaries of the oil and general properties were identical. The purpose in creating them was not to liquidate but to hold together the several properties of the McKean family, and to manage them as one unit in the most advantageous manner for the earning of income.

The trustees have exercised practically all of the powers granted to them in each of the trust agreements. The only question here is whether the persons involved were associated together for the purpose of doing business within the meaning of the revenue laws.

There is no statutory definition of an association. The act says that the term corporation shall include, inter alia, associations. Treasury regulation 77, article 1312, so far as applicable, provides that associations shall include common-law trusts and organizations, by whatever name known, which act or do business in an organized capacity, the net income of which is distributable among the shareholders on the basis of the proportionate share or capital which each has in the business or property of the organization. In distinguishing associations from the ordinary trust, it is pointed out that the trustees of a pure trust take title to the property for the purpose of collecting and distributing income, whereas, if the trustees' powers are not so restricted, but provide for the carrying on of some business enterprise, the unit is deemed an association, taxable as a corporation.

It is sufficient if the trust enterprise so nearly resembles a corporate organization as to warrant the conclusion that its income was intended by Congress to be taxed in the same manner as that of a corporation. The status of the business trust has been dealt with by the Supreme Court in three decisions.[1] The instant case is controlled by the latest of the three, wherein the Supreme Court designated five salient features of a trust which comes within the classification of an association: Centralized management; the title in trustees with provision for succession; security from termination by death of the beneficial owners; facility of transfer of the beneficial interests without affecting the continuity of the enterprise; and the limitation of their personal liability to the property embarked in the undertaking.

It is urged in this case that unity of title is lacking, the basis for this argument being that the trusts were created by ten instruments instead of one and might terminate at different times; but the effect was the same, for the duration of the shortest trust, as if only one instrument had been used to accomplish the purpose of creating an association for the carrying on of a joint enterprise for profit. The ten instruments effectively merged for a limited time the entire title of the five owners in the same trustees. The concurrent effect of these separate instruments was to give unity of title to the trustees for the taxable year in question. The association existed during that period. Unity of a fee-simple title in the trustees is not indispensable where there is unity of use, control, possession, management, and operation for a definite time, with consequent unity of income and expenses for the taxable year. As said by the United States Court of Appeals for the District of Columbia in Bert v. Helvering, 67 App.D.C. 340, 92 F.2d 491, the real test is whether the enterprise more nearly resembles, in general form and mode of procedure, a corporation than a partnership.

In the trusts now before the court, for the duration of the one first terminating, we have a pooling of property rights through mutual conveyances by living parties, making themselves the beneficiaries. The intention here is not to arrange for the ultimate transmission of a family inheritance, but to pool resources for the purpose of using them as a unit to the best advantage for their own benefit. The donative element essential in an ancestral trust is wholly lacking. While we have ten separate trusts, the instruments creating them were executed simultaneously, placing all of the property in the hands of the same three trustees and giving them identical powers. The creation of all of them was part of one plan and the result of concerted action. In such case, the transaction should be viewed as a whole. The taxpayer should not be allowed to separate them into component parts for tax purposes, having formed an association for all other purposes.

The findings disclose very extensive operations by the trustees of the farm and ranch properties, including the raising and marketing of corn, cotton, pecans, vegetables, and similar produce. Up to and including 1934, the general trusts speculated on the exchange in wheat and cotton in considerable amounts, a large part of which

---

[1] Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949; Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601.

was on margins; they also purchased at various times stocks approximately of the value of $12,000. During 1933, they purchased, and later sold at a profit on the stock exchange, wheat and cotton totalling approximately $300,000. The operating costs of these trusts were approximately $4,000 per year. The trustees of the general trusts also sold stock, collected rents, and dividends on stocks, took depreciation on its properties, and made sizeable contributions to charities. Part of the property of the general trusts was sold and the proceeds used in the operation of the trusts. The combined gross income of the five oil trusts was $48,830.78, all of which was from oil royalties except $353.55 on lease rentals, and a profit of $194.30 on the sale of property. For 1932, all income was from royalties except $330.27, received as lease rentals. In 1933, the combined income of the five oil trusts was $23,270.73 from fifty-three properties, all of which was from oil royalties except $40.

The general trusts are not parties to these suits, the appellants seeking to isolate the oil trust and arguing that their activities alone were not sufficient to meet the business test of an association. The appellee counters with the contention that the right parties are not before the court, because the assessment was made by the Commissioner against the parties collectively as an association, and the tax thus assessed was paid from the common bank account of the ten trusts. A claim for refund was filed on behalf of the ten trusts. Upon rejection of the joint claim for refund, the trustees for the five oil trusts filed separate suits seeking to recover the proportionate parts of the tax which had been prorated to the respective individual trusts. The court below consolidated the five cases. The oil trusts objected first to having the suits consolidated and secondly to the introduction of any evidence pertaining to the activities of the general trusts. The district court held that all of the separate trusts were united in their activities for business purposes, and only by considering them together, giving weight to their concerted action, various activities, and interlinking transactions, could the proper view be obtained.

I agree with the findings and conclusions of the district court, and think its judgment should be affirmed.